HODGSON, J.
 

 The present action was filed by the plaintiff, a law firm, seeking a declaratory judgment as to how much of the proceeds of an ante mortem uninsured motorist recovery settlement should be distributed to it and to others identified on a settlement
 
 *595
 
 statement and how much should be deposited with the Probate Court.
 

 In its amended complaint, the plaintiff, which represented the decedent in the proceedings that led to the creation of the asset at issue, seeks a declaration from this court determining: “(1) Whether or not the plaintiff, as trustee, may disburse to medical, legal service providers and creditors in accordance with the executed Settlement Statement and letters of protection, thus providing the decedent’s estate with a net check of $10,910.93, or (2) Whether the entire corpus of the settlement must be turned over to the decedent’s estate and therefore subject to claims which are beyond the scope of the claims enumerated in the settlement statement.”
 

 Shortly after the return day, David Walden and Melissa Walden moved to intervene as defendants in order to be heard as to their claim that all of the amounts at issue should be made part of the estate of Dwight Pink (Pink), from which they hope to recover for personal injuries, including gunshot wounds, inflicted by Pink.
 

 Upon motion by the plaintiff, notice of the pendency of this action was published in the New London Day on four occasions: July 11, 18 and 25 and August 1, 1994. No further parties moved to intervene after this notice. The plaintiff presented further evidence of publication in the Middletown Press. No claim has been made of noncompliance with the requirements of Practice Book § 390 (d).
 

 The first issue to be determined is whether this court has subject matter jurisdiction to adjudicate the issues of disbursement of the recovery being held in escrow by the plaintiff or whether those issues must be determined originally by the Probate Court. Both the plaintiff and the intervening parties, David Walden and Melissa Walden, assert that this court has jurisdiction to determine
 
 *596
 
 title to the assets in question. This court agrees with their conclusion.
 

 Pursuant to General Statutes §§ 45a-98 and 45a-98a (a), Probate Courts have jurisdiction to determine title or rights of possession of property that may constitute part of a decedent’s estate, provided the issue is not already before the Superior Court. Section 45a-98 (b) provides that “[t]he jurisdiction of courts of probate to determine title or rights or to construe instruments pursuant to subsection (a) of this section is concurrent with the jurisdiction of the Superior Court and does not affect the power of the Superior Court as a court of general jurisidiction.”
 

 The Superior Court has jurisdiction pursuant to General Statutes § 52-29 to declare rights and other legal relations or requests for such a declaration.
 

 The court finds the facts to be as follows. The plaintiff represented Pink, also known as Thomas Hill, in an uninsured motorist case. On November 7, 1991, Pink signed an agreement to the effect that in return for the plaintiffs services in representing him in his claim, he would pay the plaintiff one third of the recovery. Pink further agreed that “the fees for the services rendered shall be paid to [the plaintiff] immediately upon recovery of these money damages, whether those damages are to be paid in a lump-sum at the time judgment is entered or in period installment payments as set forth in Section 2 (c) of Public Act No. 86-338.”
 

 In January, 1992, the plaintiff issued letters of protection promising to pay several health care providers who had treated Pink in connection with the injury for which he sought uninsured motorist benefits. The health care providers were Lawrence and Memorial Hospital, Eric Thompson, a physician, and Anesthesia Associates of New London, P.C.
 

 
 *597
 
 On January 27, 1992, Pink provided the plaintiff with a notarized document authorizing the plaintiff to pay $8000 to Pearl L. Pink, the defendant, “by check upon the termination of my case with Colonial Penn Auto Insurance Co.”
 

 On September 10,1992, the plaintiff, at Pink’s request, issued a letter of protection to Attorney Edward Peters indicating that his fees for representing Pink in pending criminal matters could be paid from the uninsured motorist recovery settlement.
 

 On December 23, 1992, Pink gave the plaintiff a document titled “Escrow Agreement.” In that document, he instructed the plaintiff to hold the proceeds from a case he referred to as
 
 Hill
 
 v.
 
 Pink
 
 in escrow as collateral for a bail bond and to endorse the settlement check on his behalf. It appears that the case referred to is the uninsured motorist case, not a different lawsuit.
 

 Also on December 23, 1992, the client signed his acceptance of a disbursement agreement upon settling
 
 Hill
 
 v.
 
 Pink
 
 for $100,000. That settlement statement lists the following disbursements to be made:
 

 “Medical bills
 

 Lawrence and Memorial Hospital $31,457.07
 

 Neurological Group, P.C. 7,452.00
 

 Eric Thompson, M.D. 3,100.00
 

 Anesthesia Associates of New London 3,080.00
 

 Attorney’s fees McNamara & Goodman 26,000.00
 

 Edward Peters Esq. (by agreement) 10,000.00
 

 Pearl L. Pink (by agreement) 8,000.00
 

 $89,089.07”
 

 The settlement statement indicated that the net amount due Pink was $10,910.93 and that the plaintiff had agreed to reduce its fee from one third of $100,000 to $26,000.
 

 
 *598
 
 On January 7, 1993, Colonial Penn Insurance Company issued a check in the amount of $31,457.07 directly to Lawrence and Memorial Hospital
 
 [1]
 
 and another check in the amount of $68,542.93 to “Thomas Hill and McNamara & Goodman, His Attorney.”
 

 The plaintiff deposited the Colonial Penn Insurance Company check into its trustee account on January 11, 1993, at approximately 9:30 a.m.
 

 On the same day, and after the check was deposited, Pink shot David Walden after Walden took him for a test drive of a Ford Mustang. Walden and his spouse filed a personal injury action against Pink. In a nonjury trial, the court,
 
 Higgins, J.,
 
 awarded David Walden damages in the amount of $2,879,771.44 and Melissa Walden damages in the amount of $550,000. That judgment has not been satisfied.
 

 Pink died on January 11,1993, after shooting Walden.
 

 On March 3, 1993, after the settlement check had cleared, the plaintiff transferred $26,000 from its trustee account to the firm’s own account.
 

 The plaintiff claims that this court should give effect to the protection letters, fee agreements and assignments, and that the court should order only the net proceeds of the settlement to be deposited in the Probate Court to satisfy the claims of other creditors, including the intervenors.
 

 The intervenors claim that the entire $68,542.93 (the $100,000 payment net of the direct payment to Lawrence and Memorial Hospital) that was deposited into the plaintiffs trustee account should be part of Pink’s estate, and that the plaintiff, the doctors to whom pro
 
 *599
 
 tection letters were issued and those to whom Pink assigned part of the recovery, should be treated like all other creditors, with no prior or superior claim to any part of this asset.
 

 The plaintiff advances two theories as to why the amount it claims as its fee should not be declared part of Pink’s estate. The first theory is that payment of that fee was completed before Pink’s death by virtue of the plaintiffs receipt of a check made out jointly to the plaintiff and to Pink. The second theory is that the plaintiff had a charging lien against the settlement amount that is to be given prior effect.
 

 The plaintiff claims that when it deposited the check from the insurer that was made out to it as well as to Pink, payment of its fee was complete, such that its fee was no longer part of an asset belonging to Pink. The deposit receipt from the bank where the plaintiff deposited the check from the insurer, indicated that: “Deposits are accepted subject to verification for accuracy.” Since it has not been shown that this acceptance was ever revoked because of any inaccuracy, or for any other reason, the acceptance of the check was completed at around 9:30 a.m. on January 11, 1993, when it was deposited. (The court has not been asked to determine whether payment to the plaintiff was complete upon its receipt, rather than its deposit, of the check made out jointly to Pink and the plaintiff.)
 

 The check was made out to both Pink and the plaintiff. By depositing it in the plaintiffs trustee account, the plaintiff was acting as trustee for Pink as to his portion and as trastee for itself as to its portion. The plaintiffs transfer of the $26,000 to another account two months later is insignificant since that transfer does not alter the date of receipt of the $26,000 by the plaintiff through itself as trustee.
 

 
 *600
 
 The court finds that at the time of Pink’s death, the $26,000 fee had already been paid to the plaintiff and was not being held in trust for him, but for the plaintiff, such that this amount was not an asset of Pink at the time of his death later in the day.
 

 The plaintiff has claimed in the alternative that it had a charging lien against the settlement proceeds if the whole $68,542.93 were viewed as being held in trust only for Pink and not also for the second payee, the plaintiff.
 

 Our Supreme Court has recognized that attorneys have a retaining hen on a chent’s file, that is, a possessory hen on the chent’s papers and files that the attorney holds until his or her fee is paid. See
 
 Marsh, Day & Calhoun
 
 v.
 
 Solomon,
 
 204 Conn. 639, 643, 529 A.2d 702 (1987). The parties have cited no modem case in which that court has determined whether an attorney also has a charging hen, which the Supreme Court defined in
 
 Marsh, Day & Calhoun
 
 as “a hen placed upon any money recovery or fund due the client at the conclusion of suit.” Id., citing 7 Am. Jur. 2d, Attorneys at Law § 324 (1980).
 

 In 1883, however, in
 
 Cooke
 
 v.
 
 Thresher,
 
 51 Conn. 105, 107 (1883), the Supreme Court recognized that a lawyer has an equitable hen against a judgment that is enforceable against the client and the chent’s tmstee in insolvency.
 
 Cooke
 
 involved a claim by the tmstee against lawyers who had brought three actions on behalf of a chent, Jedediah Spalding, against George Harvey. After judgments were rendered in Spalding’s favor, Harvey appealed in two of the cases. While the appeals were pending, Spalding made an assignment in insolvency and the trustee in insolvency caused the lawyers to execute upon the judgment obtained in the third case. The court found that at the time of the insolvency, Spalding was indebted to his lawyers for their services in the three actions and, in other matters, and that
 
 *601
 
 Spalding had agreed that the lawyers were to be paid from the proceeds of the claims against Harvey. Id. The court ruled that the trial court should have charged the jury that the applicable law is as follows: “If an attorney has rendered services and expended money in instituting and conducting a suit and the plaintiff orally agrees that he may retain so much of the avails thereof as will pay him for his services and expenses therein and for previous services in other matters, and he thereafter conducts the suit to a favorable conclusion, he has, as against such plaintiff, an equitable lien upon the avails for the services and expenses in the suit, and for the previous services embraced in the agreement; and the trustee in insolvency of the plaintiff, coming to the estate after the making of such agreement, steps into the place of his assignor, and takes the avails as assets burdened by such equitable incumbrance.” Id.
 

 The plaintiff asserts that a charging lien exists not only as to judgments but also as to settlements. In a case in which an attorney asserted such a lien against a fund created by settlement, however, the Supreme Court ruled that no charging lien existed. In that case,
 
 DeWandelaer
 
 v.
 
 Sawdey,
 
 78 Conn. 654, 63 A. 446 (1906), a client settled a case on her own and withdrew it without paying her counsel his agreed fee from the settlement. The court found that the client had agreed to compensate the attorney by assigning to him “so much of
 
 any judgment
 
 which might be obtained in said cause in her favor as would be necessary to compensate him for services rendered . . . .” (Emphasis added; internal quotation marks omitted.) Id., 655. The court ruled that in such circumstances, “the attorney has an equitable lien for his services and expenses upon the judgment afterward obtained.” Id., 658. The court stated that “[t]his was the extent of the right acquired by [the attorney] by the agreement with his client.” Id., citing
 
 Cooke
 
 v.
 
 Thresher,
 
 supra, 51 Conn. 105.
 

 
 *602
 
 It is ambiguous whether by the previously quoted statement the Supreme Court meant that the equitable charging hen recognized in
 
 Cooke
 
 applied only to judgments, not to settlements, or whether the court was merely noting the limitation of the fee agreement before it: the client in
 
 DeWandelaer
 
 had agreed to pay the attorney only out of the proceeds of
 
 & judgment,
 
 not out of the proceeds of a
 
 settlement,
 
 so the court was simply refusing to expand the attorney’s right beyond the actual agreement.
 

 In many jurisdictions, charging hens are recognized and the conditions under which they may be asserted are set forth in statutes. New York, Missouri, Massachusetts, Maryland, New Hampshire, Illinois, Colorado, Minnesota, Iowa and Washington all have attorney hen statutes. See, e.g., New York Jud. L. § 475 (McKinney 1983); see also
 
 In re Marriage of Berkland,
 
 762 P.2d 779, 782 (Colo. App. 1988);
 
 Dept. of Public Works
 
 v.
 
 Exchange National Bank,
 
 93 Ill. App. 3d 390, 393-94, 417 N.E.2d 1045 (1981);
 
 Tri City Equipment Co.
 
 v.
 
 Modern Real Estate,
 
 460 N.W.2d 464, 466 (Iowa 1990);
 
 Diamond
 
 v.
 
 Diamond,
 
 298 Md. 24, 35, 467 A.2d 510 (1983);
 
 Newton Housing Authority
 
 v.
 
 Cumberland Construction Co.,
 
 5 Mass. App. 1, 8-9, 358 N.E.2d 474 (1977);
 
 Empro Corp.
 
 v.
 
 Scottland Hotels, Inc.,
 
 449 N.W.2d 734, 737 (Minn. App. 1990);
 
 Ganaway
 
 v.
 
 Dept. of Social Services,
 
 753 S.W.2d 12, 14 (Mo. App. 1988);
 
 Fleet Bank
 
 — N.H. v.
 
 Chain Construction Corp.,
 
 138 N.H. 136, 141, 635 A.2d 1348 (1993).
 

 In other jurisdictions, such as Pennsylvania, Illinois, Florida and California, a common-law hen is recognized as an equitable means to enforce a client’s agreement to pay fees from the judgment or settlement achieved by the efforts of counsel. See, e.g.,
 
 Siciliano
 
 v.
 
 Fireman’s Fund Ins. Co., 62
 
 Cal. App. 3d 745, 752, 133 Cal. Rptr. 376 (1976);
 
 Lochner
 
 v.
 
 Monaco, Cardillo & Keith,
 
 551 So. 2d 581, 584 (Fla. App. 1989);
 
 Dept. of Public Works
 
 
 *603
 
 v.
 
 Exchange National Bank,
 
 93 Ill. App. 3d 390, 393-94, 417 N.E.2d 1045 (1981);
 
 Recht
 
 v.
 
 Urban Redevelopment Authority,
 
 402 Pa. 599, 604-608, 168 A.2d 134 (1961).
 

 Cooke
 
 v.
 
 Thresher,
 
 supra, 51 Conn. 105, indicates that Connecticut is among those states in which a lien exists at common law rather than as a matter of statutory entitlement.
 
 Cooke
 
 has never been overturned, and the same principles apply to attorney’s efforts that create settlements as to efforts that create judgments where, as here, the client has expressly agreed that the attorney shall be compensated from the recovery.
 

 It must be noted that the trustee in
 
 Cooke
 
 was not merely a person to whom the client had assigned his right to a debt or a claim but a trustee in insolvency, apparently a person whose task it was to collect Spalding’s assets for distribution to creditors. The trustee claimed, as do the intervenors in the present case, that the whole asset should be part of the estate and that the lawyers should have the same status as other creditors with regard to that asset. The Supreme Court in
 
 Cooke
 
 rejected that approach and treated the fee agreement as creating a lien that was to be applied to the particular asset first, with the net balance to go to the estate. Id., 107.
 

 Cooke,
 
 as previously mentioned, has never been overturned. In
 
 Marsh, Day & Calhoun
 
 v.
 
 Solomon,
 
 supra, 204 Conn. 644, the Supreme Court approved, albeit in the context of retaining rather than charging liens, the principle that an attorney who has worked on a matter shall be favored with regard to the asset he or she has worked to create. Such recognition suggests that the Supreme Court would continue to recognize the existence of a common law charging lien against a recovery secured by the efforts of an attorney where, as here, there is a written agreement that entitles the attorney to obtain his fee from the recovery.
 

 
 *604
 
 In other contexts involving hens, the Supreme Court has ruled that no distinction is to be made between recoveries achieved by judgment and those obtained by settlement.
 
 Koskoff, Koskoff & Bieder
 
 v.
 
 Allstate Ins. Co.,
 
 187 Conn. 451, 454-55, 446 A.2d 818 (1982) (insurer’s statutory hen on recovery of basic reparations benefits applies both to judgments and settlements).
 

 This court concludes that the fee agreement between Pink and the plaintiff and the further agreement memorialized in the disbursement statement to have that fee paid from the settlement gave rise to a charging hen, which must be given effect before the remaining portion of the asset becomes part of the estate to be probated.
 

 No hen or priority has been shown to exist with regard to the bills of the physicians or the assignments to an attorney who rendered services other than those creating the fund at issue or to Pearl L. Pink for repayments of debts. Other than the plaintiff, the creditors listed on the disbursement agreement have estabhshed no right to be treated with priority or in a manner different from other claimants against Pink’s estate, including the intervenors, David Walden and Mehssa Walden. They were not payees on the settlement check and their status is that of creditors of Pink at the time of his death.
 

 Because this court’s determinations, are as set forth above, such that the plaintiff’s fee is subject to different legal doctrines than the claims of others listed on the disbursement sheet, it is not possible to respond simply “yes” or “no” to the declarations posed.
 

 Instead, this court declares that the plaintiff had been paid before Pink’s death, a charging hen applies, and the plaintiff is entitled to retain its fee in the amount of $26,000. The remainder of the corpus of the settlement must be turned over to the decedent’s estate to be subject to the other claims set forth in the disbursement
 
 *605
 
 statement and all other claims, including those of the intervenors.
 

 Judgment shall enter in accordance with the above declaration of the court.
 

 [1]
 

 The record does not reveal whether this payment was the result of a garnishment.