[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR ORDER IN AID OF EXECUTION #111
This motion requires the court to determine whether a law firm's so-called "common law charging lien" is to be recognized and enforced. and, if so, further requires the court to designate its place in line with other creditors of its client. CT Page 8637
Movant obtained a small ($6.771.77) judgment against "Cristwood". Subsequently, Cristwood suffered another and larger judgment ($275,656.37), as obtained by "Peerless" and "Netherlands". Shortly, thereafter Cristwood obtained a judgment ($104,901.19) against "BCHC.[1] Thus, there are two litigants, successful against Cristwood, Butterworth and Peerless/Netherlands who vie for the proceeds of Cristwood's victory against BCHC, but they are not alone, for Cristwood's own law firm claims fees which could consume all of said proceeds if honored in full, due to the firm's representation of Cristwood in various matters.
Thus, the plaintiff Butterworth and Peerless and the Cristwood lawyers seek an order from the court determining the interests of the parties to the proceeds of the $104,901.19 judgment rendered for Cristwood in the BCHC action, and to order the distribution and turnover of the funds.
"Where a dispute exists between the judgment debtor or judgment creditor and a third person concerning an interest in personal property sought to be levied on, or where a third person claims that the execution will prejudice his superior interest therein, the judgment creditor or third person may, within twenty days of service of the execution or upon application by the judgment creditor for a turnover order, make a claim for determination of interests pursuant to this section." General Statutes § 52-356(a).
Peerless initially argued that any charging liens against the Cristwood judgment funds should be pro-rated as to all creditors. In its supplemental memorandum of law, however, Peerless agrees that the law firm of Willinger, Shepro, Tower Bucci and its predecessor law firm, Wolf, Horowitz Thayer, have first priority for attorney's fees/costs for services rendered in the BCHC action. Peerless further agrees that Butterworth has a perfected judgment lien. Finally, Peerless asserts that, based on Peerless' perfected judgement lien. it is entitled to the balance of judgment. Thus, the priority according to Peerless is (1) the attorneys charging liens; (2) Butterworth and (3) Peerless.
The court finds that this order of priorities is proper. "The lien of an attorney for services rendered in an action relates back to, and takes effect from, the time of the commencement of the services, and is paramount to any right of the parties to the CT Page 8638 suit." 7 Am.Jur.2d 340. Attorneys At Law § 350 (1997). "When it attaches to a judgment it is superior to the claim of a creditor of the client who levies on the judgment, even though he or she levies prior to notice of the lien, and it is superior to a subsequent attachment, garnishment, or trustee process." 7 Am.Jur.2d 340, Attorneys At Law § 350 (1997). Therefore, the firm's charging lien, because it relates back to the time the firm rendered services to Cristwood in the BCHC action, is superior in priority to the secured liens held by plaintiff and Peerless. As to plaintiff and Peerless, the common law rule that first in time is first in right is applicable. See LindenCondominium Association, Inc. v. McKenna, 247 Conn. 575, 584,726 A.2d 502 (1999). Therefore, the plaintiff's lien is superior to that of Peerless.
 B. Amount of Each Party's Recovery
The parties dispute the amount that the firm, as the most senior creditor of Cristwood, it entitled to collect from the $104,901.19 judgment. The firm claims it rendered a total of $77,588.14 worth of legal services to defendant with regard to the BCHC action, and other unrelated matters. The firm contends that it is entitled to recover fees for work done which was unrelated to the BCHC action, relying on Cooke v. Thresher,51 Conn. 105 (1883). The firm argues that pursuant to Cooke, a charging lien extends not only to the services and expenses of the particular suit which generated the judgment. but also to previous services in other matters. The firm further argues that although Judge Gormley awarded $15.126.31 in attorney's fees to the firm for its work on the BCHC action. that amount is irrelevant for purposes of the present motion.
Peerless argues that the Cooke case is inapposite, because inCooke the client specifically agreed that his lawyers were to be paid for their services in any matters from the proceeds of certain claims against a third party. Peerless also contends that the firm should be limited to the $15,126.31 awarded by Judge Gormley.[2]
In Cooke, the defendant attorneys, on behalf of their client. Spalding, instituted several suits against Harvey, and obtained three judgments in Spalding's favor. Harvey took an appeal from two of the judgments, and during the pendency of those appeals. Spalding made an assignment in insolvency. At that time. Spalding was indebted to the defendants for services rendered and money CT Page 8639 expended on both the Harvey suits and other matters. Subsequent to the assignment and with the consent of Spalding's trustee, Cooke, the defendants took an execution upon the judgment against Harvey from which Harvey did not appeal. At their own expense. the defendants levied the education, thereby instituting a suit against Spalding. The defendants defended Spalding as to these levy-related suits, and in the course of settling the levy-related suits, received $200. The trustee (Cooke) sought to recover this amount from the defendants. The defendants argued that before his assignment in insolvency, Spalding was indebted to the defendants in an amount greater than $200 for services and money advanced in several unrelated suits. The defendants asserted that as a result of this indebtedness, Spalding orally assigned his claim against Harvey to them, not as present payment, but as security. Under this agreement, the defendants were to pay Spalding any surplus and Spalding would cover any deficiency. After the trial court found in favor of Cooke and against the defendants, the defendants appealed to the Supreme Court of Errors.
Based upon these facts, the Supreme Court of Errors held: "If an attorney has rendered services and expended money in instituting and conducting a suit and the plaintiff orally agrees
that he may retain so much of the avails thereof as will pay him for his services and expenses therein and for previous services in other matters, and he thereafter conducts the suit to a favorable conclusion, he has, as against such plaintiff, an equitable lien upon the avails for the services and expenses in the suit, and for the previous services embraced in the agreement; and the trustee in insolvency of the plaintiff, coming to the estate after the making of such agreement, steps into the place of his assignor and takes the avails as assets burdened by such equitable incumbrance." (Emphasis added.) Id., 107.
Cooke is distinguishable due to its unique factual underpinnings. Spalding specifically gave the defendant attorneys an oral interest in all of the matters that the defendants had undertaken on behalf of Spalding, regardless of whether those matters were related to each other. Thus, the "agreement" embraced certain past services. "In the absence of a statute or a special agreement, the general rule is that a charging lien does not extend beyond the charges and fees in the suit in which the judgement was recovered: it does not cover any general balance that may be due the attorney from the client for professional services rendered in other causes or transactions." 23 A. L.R.4th Attorney's Charging Lien. 336. 338 2. Exceptions are made where CT Page 8640 the charging lien derives from an initial action and subsequent incidental actions; 23 A.L.R.4th Attorney's Charging Lien. 342 4; or where the services are rendered under a special contract or agreement; 23 A.L.R.4th Attorney's Charging Lien, 345 § S. The Cooke case falls under the category of special contract or agreement, as an exception to the general rule. 23 A.L.R.4th Attorney's Charging, Lien. 345 § 5.
Despite the fact that Cooke is a special agreement case,Cooke has been read as establishing the "general law" of Connecticut on charging liens. That is, the principle that a charging lien is not limited to the services rendered by the attorney in the particular action that produced the fund against which the lien is claimed, but includes the full balance due for all previously rendered services, has described as this state's "general law" on the subject. See Twachtman v. Hastings, Superior Court, judicial district of Tolland at Rockville, Docket No. 057307 (July 23, 1997, Hammer, J.T.R.) (20 Conn. L. Rptr. 145), aff'd on other grounds, 52 Conn. App. 661. ___ A.2d ___ (1999). This "general" principle has heretofore only been applied in exceptional cases. For example, in Twachtman, the plaintiff attorney sought to foreclose a mortgage given to him by the defendant client to secure money the defendant owed the plaintiff as legal fees. Id., 146. The mortgage included payment for fees earned by the plaintiff for many different matters and therefore constituted a special contract or agreement.
In McNamara Goodman v. Pink, 44 Conn. Sup. 592, 696 A.d 1328 (1997), the court explained that while some jurisdictions have charging lien statutes. "[i]n other jurisdictions, such as Pennsylvania, Illinois, Florida and California, a common law lien is recognized as an equitable means to enforce a client's agreement to pay fees from the judgment or settlement achieved by the efforts of counsel." ld., 600-01. The court noted that "Cookev. Thresher, supra, indicates that Connecticut is among those states in which a lien exists at common law rather than as a matter of statutory entitlement." Id., 601. The court in McNamara
did not indicate whether a charging lien could be used to collect fees not related to the matter for which the attorney seeks repayment. The court merely indicated that Connecticut is among the states that recognize the existence of a common law charging lien.
Therefore, the court finds that as a state recognizing the validity of a common law charging lien. Connecticut adheres to CT Page 8641 the general common law principles applicable to charging liens. See DeWandelaer v. Sawdey, 78 Conn. 654, 658, 63 A. 446 (1906) (where attorney takes case with the understanding that he must look to the judgment to be obtained for compensation for his services and disbursements, the attorney has an equitable lien for his services and, expenses upon the judgment afterward obtained). A charging lien is founded upon the equity of paying an attorney for fees and disbursements out of the judgment obtained through the attorney's efforts. 7 Am.Jur.2d, Attorneys At Law § 342. Connecticut has extended this principle to settlements in favor of clients. See McNamara Goodman v. Pink, supra, 44 Conn. Sup. 592. See also Perlmutter v. Johnson,6 Conn. App. 292, 298, 505 A.2d 13, cert. denied, 200 Conn. 801,509 A.2d 517 (1986), cert. denied, 479 U.S. 1035, 107 S.Ct. 88693 L.Ed.2d 839 (1987) (plaintiff attorney obtained subject funds on defendant client's behalf as a result of an action which he undertook as defendant's attorney, and therefore was entitled to a lien on those funds). This principle would be defeated by allowing attorneys to recover fees unrelated to the judgment obtained. Thus, an attorney seeking payment of fees via a common law charging lien is entitled to attach only those funds obtained by the attorney's efforts. Unless a special agreement or contract is shown to, exist, a charging lien brought in relation to one matter cannot be used by the attorney to collect all outstanding fees from unrelated matters.
Here, the firm does not claim that it had such a special arrangement with Cristwood regarding the payment of fees. The firm cannot, therefore, rely upon the exception to the rule that a charging lien attaches only to the value of services rendered in the instant action. The firm seeks fees regarding eight different matters. including the BCHC action. The firm has failed to demonstrate that any of the other seven matters are related to the BCHC action. Accordingly, the firm is not entitled to collect on other debts owed to it by Cristwood through a charging lien brought against the judgment obtained in BCHC action.
Thus, the firm is entitled to bring a charging lien only against the judgment it obtained on behalf of Cristwood against Bridgeport Community Health Center, Inc. In that matter, Judge Gormley determined that the firm's fees should be reduced from the claimed sum of $51,448.99 to $15.126.31, with an additional $1,203 award to Cristwood's prior counsel. The final judgment in favor of Cristwood in the amount of $104.901.19 was based on this award of attorney's fees in the amount of $16,329.31. The firm has CT Page 8642 not brought to the court's attention any basis for disturbing the findings of Judge Gormley, who was in the best position to determine the amount of fees the firm was entitled to collect.[3] Therefore, this court will not allow the firm to collect fees over and above what Judge Gormley found it was owed for work performed in the BCHC action.
 III. CONCLUSION
Accordingly, the court finds that the judgment of $104,901.19 rendered in favor of the defendant should be disbursed as follows: the firm has first priority through its common law charging lien, and the firm is entitled to recover the sum of $15,126.31, as found by Judge Gormley; the plaintiff, which holds the earlier secured interest, has second priority and is entitled to collect the sum of $6,771.77; Peerless, which holds the later secured interest, is entitled to the remainder of the judgment funds.
NADEAU, J