[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is a good example of how interesting and important issues can be found in the most unlikely places. It is a simple car crash case, or, more precisely, two cases consolidated in one trial, in which both Manfred Mollica and Kenneth Kubeck were found by the jury to have been injured due to the negligence of Jean Cossette. A complicating factor, however, is that the jury also returned a verdict in favor of Mr. Mollica against Mr. Kubeck, finding him partly responsible for Mr. Mollica's injuries, and counsel for Mr. Mollica has served an execution on the insurance carrier responsible for paying Mr. Kubeck's damages, claiming an interest in that award as a judgment creditor of Mr. Kubeck. Included CT Page 9975 in those proceeds is the contingent fee of one-third, plus expenses, promised by Mr. Kubeck to his attorney when he signed a fee agreement prior to the commencement of this litigation.
So, this case asks the question: Does Mr. Mollica's perfected claim as a judgment creditor of Mr. Kubeck take precedence over any claim Mr. Kubeck's attorney has by virtue of the contingent fee agreement?
Late at night on May 26, 1995, vehicles driven by Mr. Kubeck and Ms. Cossette collided on Washington St. in Hartford. Mr. Mollica was a passenger in Ms. Cossette's vehicle. He sued both drivers, and a jury found both negligent in causing his injuries, apportioning liability 75 percent to Ms. Cossette and 25 percent to Mr. Kubeck. The total award to Mr. Mollica was $139,000; thus, Mr. Kubeck is liable to him in the amount of $34,250.
In the same trial the same jury found Ms. Cossette partly responsible for causing Mr. Kubeck's injuries and awarded him $7,572 in damages. Because they found him comparatively negligent (25 percent) in causing his own injuries, however, his award was reduced to $5,679. Of that amount his attorney claims that he is due $1,893 for his fee and $1,275.46 for expenses by virtue of a contingency fee agreement entered into by Mr. Kubeck before the litigation commenced.
Mr. Mollica's counsel served on Ms. Cossette's insurance carrier an execution on Mr. Kubeck's entire award before it was paid. Mr. Kubeck's counsel has filed a "Motion for Attorney's Fees and Costs", seeking an order that he is entitled to payment of his fee and expenses out of the award before Mr. Mollica's execution is satisfied. I have treated that motion as the functional equivalent of an application under General Statutes § 52-356c for a determination of disputed interests in attached property and have enjoined the carrier from disbursing the award pursuant to the execution until I have resolved the competing claims of Mr. Mollica and Mr. Kubeck's counsel.[1]
Generally speaking:
An attorney has a special or charging lien for his or her services to secure compensation for obtaining a judgment . . . for the client. This lien . . . is founded on the equity of an attorney to be paid his or her fees and disbursements out of the judgment he or she has obtained. Thus, an attorney's charging lien . . . gives the attorney an equitable ownership interest in the client's cause of action, and the client's property right in his or her own cause of action is CT Page 9976 only what remains after transfer to the attorney of the attorney's agreed-on share.
7 Am.Jur.2d, Attorneys at Law § 342 (1997).
Whether an attorney has such a common law charging lien is not open to question in Connecticut.[2] "It has long been held that an attorney has `an equitable lien upon the avails [of his actions for a client] for the services and expenses in the suit.' Cooke v. Thresher, 51 Conn. 105, 107
(1883)." Perlmutter v. Johnson, 6 Conn. App. 292, 298 (1986). Accord:DeWandelaer v. Sawdey, 89 Conn. 654, 658 (1906); Walker v. HartfordRealization Co., 74 F.2d 56 (2d Cir., 1934; Paine Webber, Inc. v.Chapman, Moran, Superior Court, judicial district of Fairfield, Docket No. CV 290715, 1994 Ct. Sup. 8939 (Sept. 7, 1994); McNamara Goodman v.Pink, 44 Conn. Sup. 592 (1997); Butterworth Scheck, Inc. v. CristwoodContracting, Inc., Superior Court, judicial district of Fairfield, Docket No. CV 94 318818, 1999 Ct. Sup. 8636 (June 18, 1999).
The first expression of this principle seems to have been in the 1836 case of Gager v. Watson, 11 Conn. 168. "An attorney, as against his client, has a lien upon all papers in his possession for his fees and services performed in his professional capacity, as well as uponjudgments received by him." (Emphasis added.) Id., 173. Two years later, in Andrews v. Morse, 12 Conn. 444 (1838), the Court reaffirmed the validity of such a lien, pointing to several decisions of "the common law courts of England" as recognizing its existence. Id., 446. In Andrews the attorneys were permitted to pursue collection of their share of a verdict even though the defendant had already paid their client. ". . . (T)he claims of the attorneys here have not been defeated, by any legal or equitable rights of others; but exist as perfectly against Andrews. theexecution debtor . . . as against their own client. Morse." (Emphasis added.) Id., 447. This appears to be the first recognition that this claim as against the client could also affect the rights of another.
It is equally clear from these early cases that the attorney's lien was not superior to all other claims, even against the proceeds of the judgment which the attorney's services had helped to secure. For example, in the seminal Gager case the Court makes clear that "the attorney's lien upon judgments is subject to the equitable claims of the parties in the cause, as well as to the rights of third persons, which cannot be varied or affected, by such lien." Gazer v. Watson, supra,11 Conn. 173. And, the attorney in that case was denied the court's assistance in realizing his lien because a judgment creditor had attached the proceeds of the lawsuit before the client had assigned them to his attorney in payment of the latter's fees and expenses. CT Page 9977
Indeed, the rights of third parties were explicitly at issue in the earliest reported case concerning attorney's liens, Rumrill v.Huntington, 5 Day (Conn.) 163 (1811). ". . . (A)n attorney has no lien upon a judgment obtained in favor of his client, which can vary or affect the rights of a stranger. No such lien is created, either at common law, or by the principles of chancery." Id., 165. The attorney's lien inRumrill was honored against the claim of a judgment creditor of his client because his client had assigned the judgment to him in payment of his fees and expenses prior to the creditor' petitioning the court for a setoff of mutual debts between him and the client.
The status of the attorney's charging lien under these three cases was precarious, for, although they affirm the existence of such a claim as between attorney and client, they require an additional step, an assignment by the client, to give the attorney priority over other creditors in reaching the judgment for payment of his fees and disbursements.[3]
In 1845 the case of Benjamin v. Benjamin, 17 Conn. 110, 113-14, followed Rumrill in holding that the client's assigning to his attorney of his judgment against another, in satisfaction of unpaid fees and expenses, prevented that other party from setting off against that judgment another judgment he had obtained against the client. Once again, the point seems to be that, without the assignment, the attorney's lien all by itself would not have prevented the setoff. The Court citedGager and Andrews for that proposition.
In 1848, however, Ripley v. Bull, 19 Conn. 53, while seeming to toe the same line, gives effect to an assignment by the client to the attorney made while the case was still pending. The effect was to deny a setoff to a judgment creditor when the client had assigned to his attorney "all claims (the client) might have against the (judgment creditor)." (Emphasis added.) Id., 56-57.
Moreover, in Ripley the Court acknowledges that allowing the attorney to take an assignment of a judgment from his client without regard for the right of another creditor to setoff against the judgment other claims he has against the client is a departure from the general rule that one takes a chose in action subject to all other claims against it. It departs from the general rule and from what it perceives as the rule in other jurisdictions only for "an attorney claiming an assignment of a debt or judgment as security for his services or disbursements in a suit brought upon the debt, or in which the judgment was rendered", thus indicating a singular solicitude for such claims by attorneys.
Finally (as far as the 18th* Century is concerned), there is the case CT Page 9978 of Cooke v. Thresher, 51 Conn. 105 (1883).
 If an attorney has rendered services and expended money in instituting and conducting a suit and the plaintiff orally agrees that he may retain so much of the avails thereof as will pay him for his services and expenses therein. . . . and he thereafter conducts the suit to a favorable conclusion, he has as against such plaintiff, an equitable lien upon the avails for the services and expenses in the suit. . . .
Cooke is significant for two things. First, in approving a jury instruction given by the court, it makes the agreement of the client prior to suit that his attorney will be paid for his services and expenses out of the proceeds of the pending suit the equivalent of an assignment of the client's claim to cover those fees and expenses. Id., 106-07.
Second, although it says the attorney's "lien upon the avails for the services and expenses in the suit" is "as against such plaintiff", Id., 107, the facts of the case show that it is effective as to other creditors of the client as well.
Cooke, the plaintiff, was the client's trustee in insolvency, seeking to recover for the insolvent estate and the other creditors of the client (Spalding) legal fees the attorneys received from a judgment they obtained for Spalding. A jury verdict in Cooke's favor was reversed by the Court because "the trustee in insolvency of the (client), coming to the estate after the making of such agreement, steps into the place of his assignor (the client), and takes the avails as assets burdened by such equitable incumbrance". Id., 107.
Thus, the prior creditors of the client, whose claims the trustee was seeking to satisfy, take second place to an attorney's lien on the proceeds of a suit, which lien was created by nothing more than an agreement between attorney and client, a contingent fee agreement in effect. The significance of Cooke has been recognized before.
It must be noted that the trustee in Cooke was not merely a person to whom the client had assigned his right to a debt or a claim but a trustee in insolvency, apparently a person whose task it was to collect Spalding's assets for distribution to creditors. The trustee claimed, as do the intervenors in the present case, that the whole asset should be part of the estate and that the lawyers should have the same status as other creditors with regard to that CT Page 9979 asset. The Supreme Court in Cooke rejected that approach and treated the fee agreement as creating a lien that was to be applied to the particular asset first, with the net balance to go to the estate.
McNamara Goodman v. Pink, supra, 44 Conn. Sup. 601.
So, by the end of the 19*th Century the attorney's charging lien in Connecticut, created by the mere agreement of the client that the attorney may have a certain percentage of an award as compensation for his services and costs, takes precedence over the claims of other creditors.
Nor was this development an aberration from the law as it was developing elsewhere. No less a personage than Mr. Justice Holmes, writing for the U.S. Supreme Court in Barnes v. Alexander, 232 U.S. 117
(1914), found that the mere promise to pay a contingent fee from the recovery in a lawsuit created a right in the promisee to payment as soon as the recovery was received. In Barnes one attorney promised another that, if the latter would assist him in handling a matter, he would be paid one-third of the one-fourth contingent fee the former was to receive. First the Court cited Wylie v. Coxe, 15 How. (U.S.) 415 (1853), for the proposition that "a contract for a contingent fee out of a fund awarded constituted a lien upon the fund". Id., 120.
Then, applying that principle to the dealings between the attorneys in its case, the Court said:
 Barnes . . . promised only that if, when and as soon as he should receive an identified fund one-third of it should go to the appellees. But he promised that. At the latest, the moment the fund was received the contract attached to it as if made at that moment. It is an ancient principle even of the common law that words of covenant may be construed as a grant when they concern a present right. . . . And it is one of the familiar rules of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing. . . . (Internal citations omitted.) Id., 121.
Thus, the contingent fee agreement had the effect of making the attorney-promisor a trustee for the attorneys to whom he had promised the fee. "Having a lien upon the fund, as soon as it was identified they could follow it into the hands of the appellant Barnes". (Emphasis CT Page 9980 added.) Id., 123.
Three modern decisions of the Superior Court have applied these principles to a variety of situations with the same result. In McNamara Goodman v. Pink, supra, the question was whether a contingent fee agreement gave a law firm priority over the other creditors of their deceased client, whose estate was trying to capture the fee to pay those other creditors. "The intervenors (judgment creditors of the client) claim that . . . the plaintiff (the law firm) . . . should be treated like all other creditors, with no prior or superior claim to any part of this asset (the proceeds of a lawsuit in which the law firm had represented the deceased)." Id., 596-97. The court declined to do so. Relying on Cooke v. Thresher, the court held that "the fee agreement . . . gave rise to a charging lien which must be given effect before the remaining portion of the asset becomes part of the estate to be probated".
Likewise, the court in Butterworth Scheck v. Cristwood Contracting,Inc., supra, accorded priority to the charging lien of attorneys over two creditors who had obtained judgments against the client before the client obtained the judgment against which the attorneys had their lien.
 "The lien of an attorney for services rendered in an action relates back to, and takes effect from, the time of the commencement of the services, and is paramount to any right of the parties to the suit." 7 Am.Jur.2d 340. Attorneys At Law § 350 (1997). "When it attaches to a judgment it is superior to the claim of a creditor of the client who levies on the judgment, even though he or she levies prior to notice of the lien, and it is superior to a subsequent attachment, garnishment, or trustee process." 7 Am.Jur.2d 340, Attorneys At Law § 350 (1997). Therefore, the firm's charging lien, because it relates back to the time the firm rendered services to Cristwood in the BCHC action, is superior in priority to the secured liens held by plaintiff and Peerless. Id., 8637-38.
And, in Paine Webber, Inc. v. Chapman, Moran, supra, the court recognized the priority of a charging lien over several other claims against a judgment the client had obtained against Paine Webber, including that of a claimant who had a prejudgment garnishment order. Id., 8940.
A recent decision of the Appellate Court provides another way to look CT Page 9981 at the legal effect of a contingency fee contract. In Biller Associatesv. Peterken, 58 Conn. App. 8 (2000), two of the defendants, the Peterkens, hired a public insurance adjuster after a fire on their property. They entered into an employment contract which promised the adjuster 10 percent of any amount recovered from their insurer. Nevertheless, they settled their claim with their insurers failed to notify the adjuster of the settlement and paid him no portion of it.
The court held that the contract between the defendants and the plaintiff-adjustor was valid and enforceable, and that the contingent fee provision created an "irrevocable assignment" of 10 percent of the settlement. Id., 18-19. The third defendant, the Peterkens' attorney, who had negotiated the settlement with their insurer, was found to have breached his fiduciary duties when he "intentionally excluded the plaintiff from any settlement checks and drafts to enable his client to avoid paying the plaintiff". Id., 19.
On June 14, 1995 Mr. Kubeck entered into a contingency fee agreement with his counsel which provided that the latter "shall receive a contingent fee" of specified percentages of any award received depending on the amount of the award. In addition, "any costs . . . shall be deducted from the amount of settlement after attorney's fees". According to the teaching of the charging lien cases reviewed above, this agreement created in counsel an equitable ownership interest or equitable lien which became effective upon the commencement of services or, at the latest, upon the return of a verdict. Barnes v. Alexander, supra,232 U.S. 121.
The verdicts in these cases were returned on September 13, 1999. Mr. Mollica's execution on Mr. Kubeck's award was not issued until February 7, 2000. Thus, it cannot take precedence over the attorney's charging lien.
In the alternative, by the same reasoning as in Biller Associates, supra, the contingent fee contract between Mr. Kubeck and his attorney created an irrevocable assignment of the fees and expenses provided for therein. Thus, the only asset of Mr. Kubeck's on which Mr. Mollica can execute is the remainder of the award after these are paid.
Mr. Mollica argues that, in a state which has adopted the Uniform Commercial Code, as Connecticut has, an attorney with a charging lien must perfect his lien via one of the prescribed methods in the Code. There is some support for this position in commentaries on attorney's liens. See, e.g., W. Hairston, "The Ranking of Attorney Liens against Other Liens in the United States", 7 J. Legal Prof. 193, 196 n. 16 (1982). But, no Connecticut case has so held, and the solicitous CT Page 9982 treatment which attorney's liens have received does not suggest that such a requirement would or ought to be imposed.
An important public policy, equal access to justice, is served by contingent fee contracts. See Twachtman v. Hastings, Superior Court, judicial district of Tolland, Docket No. CV 95 57307,1997 Ct. Sup. 7498, 7505-06 (July 23, 1997). Some citizens can seek redress for injuries through the judicial system only by entering into contingency contracts. If the security of an attorney's right to collect a fee and be reimbursed for expenses is subject to the claims of other creditors, this avenue would be closed off for many people. At the same time, in those cases where attorneys do make themselves available, they would be unjustly deprived of the fruits of their labor and would have to take their place in line with other creditors in seeking access to the very fund their efforts have created.[4]
Pursuant to General Statutes § 52-356c (f), the court determines that the interest of Mr. Kubeck's attorney in that portion of the verdict which represents his fee and expenses is superior to the interest of Mr. Mollica as judgment creditor. By no later than September 6, 2000 counsel for Mr. Kubeck shall submit to the court an affidavit, with appropriate documentation, as to the expenses actually paid by him in the course of the litigation in Kubeck v. Cossette. Upon receipt of that affidavit the court will enter an order of distribution of the proceeds of the verdict. Until further order of the court, the order entered on April 28, 2000, enjoining distribution of the proceeds, shall remain in effect.
BY THE COURT
Shortall, J.