[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: OBJECTION TO THE REPORT OF THE A.T.R.
CT Page 3505
The plaintiff, Irwin Gordon, alleges the following facts in his one-count amended complaint. Between April and August 1990, Mercantile Bank of Kansas City (Mercantile Bank) retained the plaintiff, in writing, as an attorney in a collection matter against Robert and Carolyn Satawhite at a one-third contingency fee. The plaintiff commenced suit and, on December 10, 1990, a judgment was entered in favor of Mercantile Bank against the Satawhites in the amount of $7191.79. In March, 1991, the plaintiff obtained an execution on the wages of Robert Satawhite. Sheriff Thomas English served the wage execution on Robert Satawhite's employer (the city of Bridgeport). On June 11, 1992, the defendant Howard Ignal and/or his law firm, Weinstein, Weiner, Ignal, Napolitano Shapiro, P.C. f/k/a Ignal and Vogel, P.C., wrote to the Bridgeport comptroller and directed the comptroller to send all wage executions to the defendant's office. The sheriff and the plaintiff were not notified of this communication. From June 1992, to the date of the amended complaint, May 2, 1997, the city of Bridgeport sent all the deductions it took from Robert Satawhite's wages pursuant to the wage executions to the defendants. The plaintiff alleges that he has a charging lien on these funds. The plaintiff also seeks attorney's fees, sheriff fees and costs.
The plaintiff initially brought a small claims action against Ignal. On December 12, 1996, the court granted Ignal's motion to transfer the case to the Superior Court. On November 12, 1997, the court, Melville, J., granted the plaintiff's motion to cite in Weinstein, Weiner, Ignal, Vogel and Napolitano, P.C. as an additional defendant.[1]
The case was referred to an attorney trial referee who submitted a report on December 14, 1998, containing the following findings of fact: 1) the plaintiff was requested to undertake the collection of Mercantile Bank's claim against the Satawhites; 2) the plaintiff offered to undertake the claim at a one-third contingency fee, plus costs; 3) Mercantile Bank, agreed to retain the plaintiff; 4) the plaintiff commenced suit in Superior Court and obtained a judgment on behalf of Mercantile Bank against the Satawhites for $7191.79 including costs; 5) the plaintiff applied for and was issued an execution on the wages of Robert Satawhite, an employee of the city of Bridgeport; 6) the plaintiff forwarded the execution to Sheriff English who served the execution on Robert Satawhite's employer, on March 23, 1991; 7) the sheriff's execution fee of $451.37 has not been paid; 8) the total amount of the levy including the sheriff's fees was $7549.16; 9) the plaintiff received $1540 directly from the city of Bridgeport pursuant to the wage execution; 10) the plaintiff advised Mercantile Bank that the sheriff would be paid from the funds received by him pursuant to the wage execution; 11) on June 8, 1992, Howard Ignal of the law firm of Ignal CT Page 3506 Vogel was retained by Mercantile Bank to replace the plaintiff as counsel in the Satawhite matter at a one-third contingency fee; 12) on June 11, 1992, the plaintiff was advised by Mercantile Bank to withdraw from the Satawhite matter and forwarded all funds and unused advanced costs in his possession to Mercantile Bank, which the plaintiff did, minus his fees; 13) on June 11, 1992, Ignal advised the city of Bridgeport of the change of counsel and directed the city to remit all further garnished funds in the Satawhite matter directly to him; Ignal did not advise either the plaintiff or the sheriff of his action; 14) the city of Bridgeport forwarded the balance of sums due, in the amount of $6009.16, directly to Ignal's office; 15) there was no evidence that Howard Ignal or his firm performed any services for Mercantile Bank other than to collect funds pursuant to the original wage execution; and 16) the law firm of Weinstein, Weiner, Ignal, Napolitano Shapiro, P.C. is the successor firm to Ignal Vogel P.C.
On the basis of these findings of fact, the attorney trial referee concluded that: "Plaintiff has a charging lien on funds received by the defendant by way of a wage execution on Judgment obtained by plaintiff's efforts in the Mercantile Bank v. Satawhite case."[2] The attorney trial referee recommended that judgment be entered in favor of the plaintiff for $2003.06 and that the plaintiff be responsible for and pay the sheriff's fees in the amount of $451.37.
On December 29, 1998, the defendants filed a motion to correct the attorney trial referee's report on the grounds that the findings of fact were erroneous because the facts established that Ignal was not acting individually in the Satawhite matter and that the plaintiff was discharged for cause for failure to remit in a timely manner. The attorney trial referee denied the motion to correct on December 29, 1998.
The defendants apparently did not file an exception to the attorney trial referee's report, however, on December 28, 1998, the defendants filed objections to the acceptance of the attorney trial referee's report on the grounds that: (1) the attorney trial referee erred in finding that Ignal was individually liable to the plaintiff; (2) the attorney trial referee erred in finding that Weinstein, Weiner, Ignal, Napolitano Shapiro, P.C. was the successor law firm to Ignal Vogel, P.C. because Weinstein, Weiner, Ignal, Napolitano Shapiro, P.C. is not a party to the action and that even if it was the successor firm, there was no evidence that Weinstein, Weiner, Ignal, Napolitano Shapiro, P.C. agreed to assume the liabilities of Ignal Vogel, P.C.; (3) the attorney trial referee erred in entering a money judgment in favor of the plaintiff because the plaintiff requested only equitable relief; (4) the attorney trial referee erred in concluding that the plaintiff had a charging lien CT Page 3507 because the plaintiff failed to name a party necessary to this action and failed to prove he had a charging lien against the defendants; and (5) the attorney trial referee erred in determining that the plaintiff is entitled to judgment because the plaintiff was discharged for failure to remit in a timely manner. The file does not reflect that the plaintiff filed a written response to the defendants' objections.
"Procedures before attorney state trial referees are governed by Practice Book §§ 434 through 444 [Practice Book (1998 Rev.) §§ 19-8 through 19-18]. Attorney trial referees are empowered to hear and decide issues of fact. . . . The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." (Citations omitted.) TDSPainting Restoration, Inc. v. Copper Beach Farm, Inc., 45 Conn. App. 743,750-51, 699 A.2d 173, cert. denied, 243 Conn. 908, 701 A.2d 338 (1997). Section 19-16 (1998 Rev.) provides in part: "If exceptions' or objections have been seasonably filed, the case should be claimed for the short calendar for hearing thereon; and the court may, upon the decision as to them, forthwith direct judgment to be rendered." Section 19-17 (1998 Rev.) provides in part: "(a) The court shall render such judgment as the law requires upon the facts in the report. . . . If the court finds that the [attorney trial referee] has materially erred in its rulings . . . or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another [attorney trial referee] for a new trial or revoke the reference and leave the case to be disposed of in court."[3]
The procedure a party must follow in order to object to an attorney trial referee's report and the scope of a trial court's review thereof depends upon the portion of the report that is challenged. As to the attorney trial referee's findings of fact, "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [now § 19-17]. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with definite and firm conviction that a mistake CT Page 3508 has been committed." (Citations omitted; internal quotation marks omitted.) Meadows v. Higgins, 249 Conn. 155, 162,733 A.2d 172 (1999). "[A] trial court cannot find additional facts or reject others unless a material fact has been found without evidence." TDS Painting Restoration v. Copper BeechFarm, supra, 45 Conn. App. 751.
At the time the attorney trial referee's report was issued and the defendants' motions were filed in this case, a party contesting an attorney trial referee's findings of fact was required to file a motion to correct the report pursuant to Practice Book § 19-12 and then an exception to the report pursuant to Practice Book § 19-13.[4]
Section 19-12 (1998 Rev.) specifically provided, in part: "If either party desires to have the report or the finding corrected by striking out any of the facts found, or by adding further facts . . . such party shall within two weeks after the filing of the report or finding file with the court a motion to correct setting forth the changes and additions that are desired. . . ." Section 19-13 (1998 Rev.) specifically provided, in part: "If a committee fails to correct a report or finding in compliance with a motion to correct, the moving party may, within ten days after the decision on the motion to correct, file exceptions seeking corrections by the court in the report or finding. The court will not consider an exception unless its subject matter has been submitted to the committee in a motion to correct . . . nor will the court correct a finding of fact unless a material fact has been found without evidence or the committee has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear. A partyexcepting on these ground must file with the party's exception atranscript of the evidence taken before the committee, except such portions as the parties may stipulate to omit." (Emphasis added.)
When a party contests an attorney trial referee's legal conclusions, the court "must determine whether [legal conclusions] are legally and logically correct and whether they find support in the facts found by the [attorney trial] referee." (Internal quotation marks omitted.) Villanov. Polimeni, 54 Conn. App. 744, 747-748, 737 A.2d 950, cert. denied,251 Conn. 908, 739 A.2d 264 (1999). At the time the defendants filed their objections, a party objecting the attorney trial referee's conclusions of law was required to file an objection to acceptance of report pursuant to Practice Book § 19-14. At that time, § 19-14 stated: "(a) A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted. (b) If an objection raises an issue of fact the determination of which may require the CT Page 3509 consideration of matters not appearing in the report or stenographic notes of proceedings before the committee, the adverse party shall, within two weeks after the filing of the objection, file a statement raising such issue."[5]
In this case, the following objections made by the defendants' are objections to the attorney trial referee's findings of fact: (1) that the attorney trial referee erred in finding that Ignal was individually liable to the plaintiff; (2) that the attorney trial referee erred in finding that Weinstein, Weiner, Ignal, Napolitano Shapiro, P.C. was the successor law firm to Ignal Vogel, P.C.; and (3) that the attorney trial referee erred in determining that the plaintiff was entitled to judgment because the plaintiff was discharged for failure to remit. These objections cannot be corrected because the defendants did not file an exception and a transcript of the proceedings.
It is axiomatic that "[s]ection 440 [Practice Book (1998 Rev.) § 19-14] . . . cannot be used to attack findings of fact." Iroquois GasTransmission System v. Mileski, 43 Conn. App. 47, 52, 682 A.2d 140
(1996), cert. denied, 239 Conn. 936, 684 A.2d 707 (1996). "Th[e] exceptions must be accompanied by a transcript of the evidence taken before the referee, apart from such portions as the parties may stipulate to omit." (Emphasis added.) Garofalo v. Argraves, 147 Conn. 685, 687-88,166 A.2d 158 (1960). When the party objecting to findings of fact fails to file a transcript with the trial court, "the trial court properly [concludes] that it [is] impossible for the court to ascertain whether there is support in the record for the referee's findings of fact." (Internal quotation marks omitted.) Meadows v. Higgins, supra,248 Conn. 170 n. 10. In such circumstances, "the factual findings properly [stand] uncorrected and the [trial] court's role in [ruling on the objection is] limited to determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." (Internal quotation marks omitted.) Id. Because the defendants here did not file an exception and a transcript, "the court has no basis upon which to correct any finding of fact," Green Gross P.C. v. Senie, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 340114 (September 10, 1998, Mottolese, J.), and the court can only determine whether the facts found by the referee support the referee's conclusion.
The defendants' remaining objections arguably challenge the attorney trial referee's legal conclusion. Accordingly, the court must "review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report. . . . [T]he trial court cannot accept an attorney trial referee's report containing legal conclusions for which there are no subordinate facts." CT Page 3510Post Road Iron Works v. Lexington Development Group, Inc.,54 Conn. App. 534, 541, 736 A.2d 923 (1999).
The defendants object that the referee erroneously "entered a money judgment in favor of the plaintiff' despite the plaintiff's failure to include a prayer for relief in his complaint. "Practice Book § 131 [Practice Book (1998 and 2001 Rev. § 10-20] states that a complaint `shall contain a concise statement of the facts constituting the cause of action and, on a separate page of the complaint, a demand for relief which shall be a statement of the remedy or remedies sought.'" DiMartinov. Physicians Health Services, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 286993 (May 5, 1993, Ballen, J.). "In an ordinary civil case, the general rule is that a prayer for relief must articulate with specificity the form of relief that is sought. . . . A party who fails to comply with this rule runs the risk of being denied recovery." (Citations omitted.) Stern v. Medical Examining Board,208 Conn. 492, 501, 545 A.2d 1080 (1988).
When a plaintiff seeks equitable relief, however, Practice Book §10-27 states: "A party seeking equitable relief shall specifically demand it as such, unless the nature of the demand itself indicates that the relief sought is equitable relief." "Where the nature of the case and the nature of the plaintiff's demand is such that equitable relief is clearly being sought, a specific demand for equitable relief is not necessary." (Citation omitted.) Dorsey v. Mancuso, 23 Conn. App. 629, 634, 583 A.2d 646
(1990), cert. denied, 217 Conn. 809, 585 A.2d 1234 (1991). In Cooke v.Thresher, 51 Conn. 105, 107 (1883), the Supreme Court indicated that a charging lien is a common law lien "recognized as an equitable means to enforce a client's agreement to pay fees from the judgment or settlement achieved by the efforts of counsel." McNamara Goodman v. Pink,44 Conn. Sup. 592, 600-01, 696 A.2d 1328 (1997).
In this case, the attorney trial referee's recommendation that monetary judgment enter in favor of the plaintiff is legally and logically correct and is supported by the attorney trial referee's findings of fact.[6]
As noted by this court in denying Ignal's motion for summary judgment; "The original complaint filed against Attorney Ignal requests a monetary award of approximately $2,500, which is the amount Attorney Gordon would have received for his legal services and the sheriff's fee had Attorney Ignal not interfered with Attorney Gordon's right to a charging lien."Gordon v. Ignal, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 339700 (September 22, 19977 Thim, J.). Therefore, the defendants' objection to the attorney trial referee's recommendation that a monetary judgment should be entered in favor of the plaintiff.
The defendants object to the attorney trial referee's report on the CT Page 3511 grounds that the plaintiff failed to name a necessary party and the attorney trial referee erroneously concluded that the plaintiff had a charging lien against the defendants. As to the first part of this objection, the defendants apparently contend that Mercantile Bank was a necessary party to this action. Necessary parties are "[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. . . . In short, a party is necessary if its presence is absolutely required in order to assure a fair and equitable trial." (Internal quotation marks omitted; citations omitted.)Biro v Hill, 214 Conn. 1, 5-6, 570 A.2d 182 (1990). "Ordinarily, an objection predicated on a claim of nonjoinder of a necessary or indispensable party does not go to the jurisdiction of the court. . . . Unless a defendant promptly raises the question of nonjoinder pursuant to applicable rules of practice, any such objection is deemed to have been waived, and cannot be raised at a later stage of the proceedings. . . . When, however, a suit cannot be disposed of properly on its merits in the absence of an indispensable party, the objection is not waived by failure to assert it in a motion to strike and may be raised on appeal." (Citations omitted.) Gauido v. Gauido, 23 Conn. App. 287, 305-306,580 A.2d 1212, cert. denied, 217 Conn. 803, 548 A.2d 471 (1990).
In this case, the attorney trial referee's findings of fact support the referee's legal conclusion and do not support the defendants' argument. The only finding the attorney trial referee entered regarding who had possession of the funds was his finding that as of June 11, 1992, Robert Satawhite's employer forwarded the funds directly to Ignal's office. The attorney trial referee did not enter a finding as to whether Mercantile Bank gained possession of the funds.
In the second part of this objection, the defendants contend that the attorney trial referee did not logically and correctly conclude that the plaintiff had a charging lien against the defendants. A charging lien "is a lien placed upon any money recovery or fund due the client at the conclusion of suit." Marsh, Day Calhoun v. Solomon, 204 Conn. 639,643, 529 A.2d 702 (1987). "It is noted that Connecticut law concerning attorney charging liens is relatively undeveloped. In Andrews v. Morse,12 Conn. 444 (1838), the court recognized attorneys may have a lien on the judgment `until their fees and disbursements are paid, subject to the equitable rights of others.' Id. 446. The [Supreme] court has since recognized the continued vitality of its holding, but has never actually CT Page 3512 applied the rule again. See Marsh, Day Calhoun v. Solomon, [supra,204 Conn. 644]; Benjamin v. Benjamin, 17 Conn. 110 (1838)." PaineWebber, Inc. v. Chapman, Moran, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 290715 (September 7, 1994, McGrath,J.). "In Marsh, Day Calhoun v. Solomon, supra, [204 Conn. 644], the Supreme Court approved, albeit in the context of retaining rather than charging liens, the principle that an attorney who has worked on a matter shall be favored with regard to the asset he or she has worked to create. Such recognition suggests that the Supreme Court would continue to recognize the existence of a common law charging lien against a recovery secured by the efforts of an attorney where, as here, there is a written agreement that entitles the attorney to obtain his fee from the recovery." McNamara Goodman v. Pink, supra, 44 Conn. Sup. 601-02.
"An attorney's charging lien on a judgment is intended to secure compensation for services rendered to the client. 7 Am.Jur.2d Attorneysat Law § 324 (1980 Supp. 1993). At common law, the lien gives an attorney the right to recover his fees and the money expended on behalf of the client from a judgment the attorney obtained for the client. Id. Underlying any charging lien must be an express or implied contract for fees entered into by the attorney and client. Id. Such a lien may also be created by a contingency fee agreement in which the parties contract that the attorney's fees will come from the judgment recovered. Id., § 326." Paine Webber, Inc. v. Chapman, Moran, supra, Superior Court, Docket No. 290715. Thus, Connecticut law recognizes and will enforce an attorney's charging lien upon a fund created by litigation up to the amount expressly contracted for legal fees and costs by the client. SeeMcNamara Goodman v. Pink, supra, 44 Conn. Sup. 592.
In this case, according to the attorney trial referee's findings, the plaintiff and Mercantile Bank agreed that the plaintiff would undertake collection of the Satawhite matter for a one-third contingency fee. Thus, the findings indicate the plaintiff and Mercantile Bank had a valid contract for fees based on the amount of the judgment. The attorney trial referee also found that the plaintiff undertook the representation, obtained a judgment and initiated the collection thereof and that Mercantile Bank retained Ignal to replace the plaintiff in this matter and the balance for the funds collected on the judgment were sent directly to Ignal's office. Thus, the attorney trial referee's conclusion that the plaintiff had a charging lien is supported by the subordinate facts and is legally and logically correct.
Accordingly, defendants' objections are overruled and judgment may enter for the plaintiff in accordance with the referee's report.
RUSH, J. CT Page 3513