[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #158
CT Page 16340
This matter involves the foreclosure of a mortgage note executed in favor of and held by the plaintiff. Before the court is the plaintiff's motion for summary judgment and a memorandum of law in support thereof, filed on August 23, 2001, and objections thereto filed by three of the named defendants in the matter. The plaintiff is Carbone Financing Services, LLC, and the six named defendants are Hawley 560, LLC; James R. Fitzpatrick; Morgan X. Helies; Complete Construction Co, Inc.; Blastech, Inc.; and Fay Wright Excavating, Inc. The court, Mottolese,J., cited in the following three defendants upon motion by the plaintiff: Fitzco, LLC; Tilton and Associates, Inc., d/b/a A. M. Engineering, one of the Tilton companies; and Barry C. Knott.
The plaintiff alleges the following facts in its second amended complaint, (the operative complaint) filed on December 18, 2000. On September 23, 1999, Hawley 560, LLC (hereinafter, "Hawley"), pursuant to the terms and conditions of a loan agreement of the same date, executed a mortgage note, for the principal amount of $4.1 million. As partial security for the note, on September 23, 1999, Hawley granted an open-end mortgage and security agreement and an assignment of leases and rents in favor of the plaintiff on a parcel of land located at 560 Hawley Lane, Stratford, Connecticut (hereinafter, "property"). The mortgage, security agreement, and assignment were recorded on September 24, 1999, in the Stratford land records at volume 1538. As further security for the note, on September 23, 1999, James R. Fitzpatrick and Morgan X. Helies each executed a guaranty in favor of the plaintiff that absolutely and unconditionally guaranteed full and punctual payment and Hawley's performance of all liabilities, agreements, and other obligations to the plaintiff
The plaintiff is the owner of the note, the loan agreement, the mortgage, the assignment, and both guaranties. Hawley is in default under the note, the loan agreement, and the mortgage for failure to make payment and to obtain releases of mechanic's liens. By letter dated August 1, 2000, the plaintiff made demand for payment on Hawley, Fitzpatrick, and Helies; no payment has been received to date. Hawley is the record owner of the premises and a notice of lis pendens has been served on Hawley.
The plaintiff accepts that other outstanding debt obligations precede and may have priority over its interest — specifically, real estate taxes due the city of Stratford; sewer assessments or use charges; and driveway, utility, and conservation easements as set forth in a deed dated September 22, 1999. The plaintiff alleges the existence of other interests which it states do not have priority over its interest because CT Page 16341 occurring subsequent in time — most particularly, Tilton and Associates, Inc. (hereinafter, "Tilton") for a mechanic's lien in the amount of $32,271.63; Fitzco, LLC (hereinafter, "Fitzco") for a mechanic's lien in the amount of $1,445,000; Manny's Excavating, LLC for a mechanic's lien in the amount of $96,700; Complete Construction Co., Inc. for a mechanic's lien in the amount of $51,374.47; Blastech, Inc, for a mechanic's lien in the amount of $136,250; Fay Wright Excavating, Inc. for a mechanic's lien in the amount of $300,856.25; Atty. Barry C. Knott's (hereinafter, "Knott") Notice of Contract; and the Town of Stratford's conservation easement. The plaintiff seeks a foreclosure of the mortgage, immediate possession of the premises, a judgment of strict foreclosure, a deficiency judgment against Hawley and the two guarantors, Fitzpatrick and Helies, an appointment of receiver of rents, any other relief in equity, and monetary damages.
Before this court is the motion for summary judgment only. On August 23, 2001, the plaintiff filed the present motion for summary judgment, claiming it is entitled to judgment as a matter of law because there is no genuine issue of material fact regarding either its ownership of the property and documents it holds or the non-payment of the mortgage note. Knott, Fitzco,[1] and Tilton have filed objections to the instant motion and supporting memoranda. These defendants assert there are genuine issues of material fact whether their liens and/or interests have priority over the plaintiff's mortgage. Oral arguments were heard on October 22, 2001. The court notes the plaintiff's memorandum addresses arguments as to Fitzco, Tilton, and Knott. As such, the court's decision addresses the merits of the plaintiff's motion only as to these defendants.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal citations and quotation marks omitted). Community Action for Greater Middlesex County,Inc. v. American Alliance Ins. Co., 254 Conn. 387, 397-398 (2000). "As the party moving for summary judgment, the plaintiff is required to support its motion with supporting documentation, including affidavits."Heyman Associates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756,796 (1995). "Although the party seeking summary judgment has the burden CT Page 16342 of showing the nonexistence of any material fact . . . [the nonmovant] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court." (Internal quotation marks omitted) Zeller v.Consolini, 59 Conn. App. 545, 564 (2000). "A `material fact' is a fact that will make a difference in the result of a case." Paul Revere LifeIns. Co. v. Pastena, 52 Conn. App. 318, 321, cert. denied, 248 Conn. 917
(1999).
"The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon. . . ." (Internal quotation marks omitted) F. B. Mattson Co. v. Tarte, 247 Conn. 234,237-38 (1998). General Statutes § 49-33 (a) provides that a mechanic's lien may be claimed "for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land. . . ." Id. "Although the mechanic's lien statute creates a statutory right in derogation of the common law . . . its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. . . . [The] interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction." (Internal citations and quotation marks omitted) NewEngland Savings Bank v. Meadow Lakes Realty Co., 243 Conn. 601, 611
(1998).
Section 49-33 (d) provides, in pertinent part, "If any instrument constituting a valid encumbrance upon such land other than a mechanic's lien is filed for the record while the . . . lot is being improved . . . all such mechanic's liens originating prior to the filing of that instrument for record take precedence over that encumbrance and no such mechanic's lien shall have priority over any other such mechanic's lien." CT Page 16343Id. "Certain equitable interests arising out of a contract for sale of land may, however, support a mechanic's lien on after-acquired property. . . . [Thus, where] the terms of contract of purchase contain a direction to the vendee to construct a building upon the premises, those who perform labor or furnish materials in order to enable the vendee to carry out that undertaking have a right of lien which will take preference over even a purchase price mortgage." (Internal citations and quotation marks omitted) New England Savings Bank v. Meadow Lakes Realty Co., op. cit.,243 Conn. 619 (1998). Thus, "[w]here a party is not the record owner, or where the party owns an interest less than fee simple absolute, the Connecticut Supreme Court has, however, recognized mechanic's liens as valid where the party that had contracted for construction services did so to fulfil a condition set forth in the contract by which the vendee was to acquire the property." Connecticut Concrete v. ARC IcesportsDanbury, Inc., Superior Court, judicial district of Waterbury at Waterbury — Complex Litigation Docket, Docket No. 160662 (February 8, 2001, Hodgson, J.).
In summary, "[i]n order to sustain a mechanic's lien under § 49-33
(a), the defendants have to show, by probable cause, that [the record] owner or equitable owner of the property: (1) had an express agreement with the defendants to perform the work, (2) authorized its agent to make an express agreement with the defendants to perform the work or, (3) gave its consent to the work being performed." Coughlin Realty v. Blastech,
Superior Court, judicial district of Middlesex at Middletown, Docket No. 092060 (March 13, 2001, Arena, J.); see also, Hall v. Peacock Fixture Electric Co., 193 Conn. 290, 293 (1984).
Tilton's Mechanic's Lien
The plaintiff asserts there are no genuine issues of material fact as to Tilton's mechanic's lien because it is invalid. Specifically, the plaintiff contends the commencement date stated in the lien is before the mortgage on the property was recorded and before Hawley obtained title to the property. In addition, Tilton's mechanic's lien does not include any work that was required to be performed under the purchase and sale agreement. In its objection, Tilton argues that it is a protected lienor because its lien is excepted from the rule against liens on after-acquired property. Tilton contends that it was performing work for Hawley, then the equitable owner of the property, as required by the purchase and sale agreement. Tilton also argues that, in the event the purchaser could not perform under the purchase and sale agreement, the work done by Tilton would benefit the seller because the seller would have a piece of land that received approval for a project. Thus, Tilton contends that its mechanic's lien is valid and should be given priority, or, in the alternative, that there is a genuine issue of material fact CT Page 16344 whether Hawley had a sufficient equitable interest to support Tilton's mechanic's lien.
Tilton's mechanic's lien indicates that it furnished materials and performed services in the construction of land and buildings on the property; the work was commenced on November 5, 1998, and was completed on June 13, 2000. The lien was filed and recorded on July 7, 2000 (Plaintiff's Exhibit 17). The chain of title reflects that on September 22, 1999, the Tomasko family conveyed title to the property to TIP and LSP, LLC (hereinafter TSP). That deed was recorded in the Stratford land records on September 24, 1999. On the same date, September 22, 1999, TJP conveyed title to the property to Hawley, and such deed was recorded in the Stratford land records on September 24, 1999 (Hawley obtained title to the property through an assignment of the purchase and sale agreement between TSP and Eastman Pierce.). Hawley thus became the record owner of the property on September 24, 1999, after Tilton began work on the property. "Connecticut has always been a "recording' state in the field of land transaction." Marshall v. Soffer, Superior Court, judicial district of New Haven at New Haven, Docket No. 407663 (December 10, 1998, DeMayo,J.T.R.). General Statutes § 47-10 embodies this policy and provides, in pertinent part, "No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies." Thus, at the time Tilton commenced work in relation to the property (November 5, 1998), the record owner was the Tomasko family. It follows that Tilton's lien is invalid unless an exception applies to it.
Tilton's arguments in support of the validity of its lien are similar to those made by the plaintiff — lienor in Centerbrook, Architectsand Planners v. Laurel Nursing Services, Inc., 224 Conn. 580 (1993).Centerbrook involved a plaintiff who sought to foreclose on a mechanic's lien for architectural and engineering services it provided on a parcel of land to enable the defendant to obtain permits to operate a day care center thereon. Id., at 582-83. The trial court granted the defendant's motion for summary judgment and declared the plaintiff's mechanic's lien null and void. Id., at 581-82. On appeal, the plaintiff argued that the trial court improperly held its lien null and void because the defendant held a sufficient equitable interest in the property to support a mechanic's lien.[2] The court rejected the plaintiff's argument and held that "in order for the buyer under a contract of purchase of real estate to have a sufficient equitable interest in the property to support a mechanic's lien in favor of the buyer's supplier of materials, the provision in the contract providing for the work on the property must be in some sense for the interest or at the behest of the seller of the property. The provision must require, as a condition of the seller's obligation under the contract, that the buyer perform the work at issue. CT Page 16345 The rationale underlying this principle is that the buyer under those circumstances is improving the land, not only for the buyer's own benefit, but also for the benefit of the record owner." Id., at 588-89.
Tilton contracted with Hawley to conduct work on the site by agreement dated November 5, 1998. Tilton contends it performed work pursuant to the purchase and sale agreement dated August 20, 1998 (Plaintiff's Exhibit 11). Specifically, Tilton contends that paragraph seven of the agreement contains language that required Hawley to perform the work done by Tilton because Hawley was required to diligently seek approvals under the agreement. The plaintiff argues that the purchase and sale agreement does not contain any language that required Hawley to perform the work performed by Tilton.
Upon review of the purchase and sale agreement, the court finds that it does not contain mandatory language that required Hawley to perform work as a condition to taking title to the property. Rather, the language of paragraph seven provides that the purchaser "shall diligently seek" the specified approvals.[3] In fact, other language in paragraph seven indicates that the purchaser has the "sole discretion" to abandon its efforts at any time after submitting its application to the Stratford Planning and Zoning Department. The court also notes that paragraph nineteen, subsection (i), of that agreement provides the "[p]urchaser shall have the `unilateral right' to waive any and all of the contingencies set forth in this Agreement." This type of "provision can reasonably be viewed only as intended for the protection of the buyer . . . and not for any benefit of the seller. . . ." 229 Conn., at 589. Thus, if the approvals had not been secured, it would have been Hawley — and not the Tomasko family or TSP — that would have had the choice of either waiving the condition and closing on the property or terminating the contract.
Tilton argues, however, that the work it performed was for the interest of or at the behest of the seller, the Tomasko family. Tilton points to the last clause of paragraph seven; it provides that, in the event the purchaser abandons its application, the agreement becomes null and void and "the Purchaser shall deliver to the seller all work product, study or other material prepared by Purchaser." Tilton argues that, if Hawley abandoned its application for zoning approvals, Tilton's work product would be delivered to the seller TJP-LSP and thus TJP-LSP would benefit from Tilton's work because it would have a piece of land that was approved for a project. The court is unpersuaded. Though the property was ultimately approved by the Stratford Planning and Zoning Department for a restaurant and hotel, no explanation is offered as to how the seller would have benefitted had Hawley abandoned the approval process (Of relevance is that the "seller" is TSP-LSP — and not the Tomasko CT Page 16346 family per se.). The court finds that Tilton has failed to sustain its burden of demonstrating there is a genuine issue of fact. Accordingly, the court grants the plaintiff's motion for summary judgment as to Tilton.[4]
Fitzco's Mechanic's Lien
The plaintiff asserts there are no genuine issues of material fact with regard to Fitzco's mechanic's lien because it is invalid. Specifically, the plaintiff contends the lien is invalid because the commencement date stated in the lien is before its mortgage on the property was recorded and before Hawley obtained title to the property. In addition, Fitzco's mechanic's lien does not include any work that was required to be performed under the purchase and sale agreement. The plaintiff also argues the lien is invalid because not signed under oath by the claimant, Fitzco. In its objection, Fitzco argues its lien is valid because Nicholas E. Owen, III, TSP's agent, consented to and authorized Fitzco to perform certain site development services, and, on TSP's behalf, agreed to be liable for such services in the event that Hawley did not acquire title to the property.
Fitzco's mechanic's lien indicates it furnished materials and performed services in the site preparation and installation of underground utilities at the property. The work commenced on September 23, 1999, and ended on August 3, 2000; the lien was filed and recorded on August 7, 2000 (Plaintiff's Exhibit 10). The chain of title reflects that on September 22, 1999, the Tomasko family conveyed title to the property to TSP and LSP, LLC (hereinafter TJP) and such deed was recorded in the Stratford land records on September 24, 1999. On September 22, 1999, TJP conveyed title to the property to Hawley, and such deed was recorded in the Stratford land records on September 24, 1999. Hawley obtained title to the property by virtue of an assignment of the purchase and sale agreement between TJP and Eastman Pierce (Plaintiff's Exhibit 6, pp. 13-17).[5] Hawley became the record owner of the property on September 24, 1999, after Fitzco began its work on the property. "Connecticut has always been a "recording' state in the field of land transaction."Marshall v. Soffer, Superior Court, judicial district of New Haven at New Haven, Docket No. 407663 (December 10, 1998, DeMayo, J.T.R.) General Statutes § 47-10 embodies this policy and provides, in pertinent part, "No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies." Thus, when Fitzco commenced work in relation to the property the record owner was the Tomasko family (Plaintiff's Exhibit 19). Therefore, Fitzco's lien is invalid unless an exception applies to it. CT Page 16347
Fitzco contracted with Hawley to conduct work on the site by agreement dated September 15, 1999, and such agreement was signed by Pillon, as a member of Hawley, and Fitzpatrick, as a contractor, on the same date (Plaintiff's Exhibit 12). Fitzco's lien is also subject to the rule against liens on after-acquired property. The same reasoning applicable to Tilton's lien applies as well to Fitzco's mechanic's lien. The purchase and sale agreement contains no language requiring Hawley to perform any work as a condition of taking title to the property. Nor has Fitzco provided the court any evidence Hawley had an equitable interest in the property sufficient to sustain a lien.
Fitzco contends, however, that it had consent from both TJP and Hawley to perform the work. In support of its position, Fitzco provides the court with affidavits from Fitzpatrick and Nicholas E. Owen, III. Fitzpatrick avers that before September 23, 1999, Nicholas E. Owen, III, agent for TJP, requested, authorized, and expressly consented to Fitzco performing certain site development work in connection with the contemplated hotel and restaurant (Affidavit of James Fitzpatrick, ¶¶ 3-4). Fitzpatrick also avers that Owen, on behalf of TJP, promised to pay Fitzco for its services in the event that Hawley did not acquire title to the property (Affidavit of James Fitzpatrick, ¶¶ 5-6). Owen states he, as TJP's agent, authorized Fitzco to perform certain site development work (Affidavit of Nicholas E. Owen, III, ¶ 5).[6] Owen avers that, in the event Hawley did not acquire title to the property, TJP would pay for Fitzco's work because TJP would benefit from Fitzco's work (Affidavit of Nicholas E. Owen, III, ¶ 6). Owen also avers, however, that, because Hawley took title to the property, TJP is not liable for the services performed by Fitzco (Affidavit of Nicholas E. Owen, III, ¶¶ 6-7).
The court finds that, when Fitzco began the site development work, the owner of the property was the Tomasko family and neither Hawley nor TJP were equitable owners of the property. Although the Tomasko family conveyed title to the property to TJP and TJP subsequently conveyed title to Eastman Pierce on September 22, 1999, title to the property was not affected until the conveyances of September 22, 1999, were recorded on September 24, 1999. See General Statutes § 47-10. In order for Fitzco's lien to be valid, Fitzco needed consent from the Tomasko family or its authorized agent. "The consent meant by the statute must be a consent that indicates an agreement that the owner of at least the land shall be, or may be, liable for the materials or labor. . . . Although an express contract is not necessary for such a consent, the services must be furnished under circumstances indicating an implied contract by the owner to pay for them (Citations omitted)." Centerbrook, Architects andEngineers v. Laurel Nursing Services, Inc., supra, 224 Conn., at 591. Fitzco has not provided the court any evidence it had consent from the CT Page 16348 Tomasko family or that Owen or TJP were authorized agents of the Tomasko family such that consent from either would make Fitzco's lien valid. Fitzco has failed to sustain its burden of demonstrating a genuine issue of material fact exists. Accordingly, the court grants the plaintiff's motion for summary judgment as to Fitzco.
Knott's Attorney's Charging Lien
Knott claims he has by common law an attorney's charging lien by virtue of a Notice of Contract recorded in the Stratford land records, and that his lien is valid and should take priority over the plaintiff's mortgage. The Notice of Contract indicates Knott and Hawley had an agreement and that such agreement was comprised of two documents: a proposal letter from Knott dated January 20, 1999, and an acceptance letter from Fitzpatrick dated February 11, 1999 (Plaintiff's Exhibit 14). The Notice of Contract was recorded on March 22, 2000, and further provides that the agreement is on file at Knott's office (Plaintiff's Exhibit 14). The proposal letter advises Fitzpatrick that Hawley could obtain tax abatements for the property for six to seven years, that Knott would work on a contingency fee basis, that the contingency fee would amount to one third of any taxes Hawley would save as a result of the abatement, and that, if Fitzpatrick were interested, he should countersign the proposal letter or advise Knott as to what actions he should take (Plaintiff's Exhibit 15). Fitzpatrick's reply letter states he and Helies had discussed Knott's proposal and that Knott could begin to pursue the tax abatements only after Hawley was authorized to obtain all necessary building and zoning permits (Plaintiff's Exhibit 15). Fitzpatrick also advised Knott that, if Knott could do any work "within your office walls which could help you in your quest, then do so." (Plaintiff's Exhibit 15). Knott alleges he began working on the tax abatement in January, 1999, that the tax abatement application was submitted in October, 1999, and that the application received final approval on October 25, 1999. He further alleges he was discharged by Hawley in April, 2000.
The plaintiff argues that, although Knott obtained the tax abatement for Hawley, Hawley did not realize or obtain the benefit of the tax savings because it did not sign the contracts that would have put the tax abatement into effect. Thus, the plaintiff contends that Knott did not generate a fund to which his lien could attach and which would give his lien priority over the plaintiff's mortgage. Knott contends the two letters constitute a contract between him and Hawley which provided that, if Knot successfully obtained the tax abatement, his fee would be one third of the tax savings. Knott argues that he successfully obtained the tax abatement for Hawley on October 25, 1999, when final approval for the tax abatement was obtained. Knott argues that Hawley's failure to CT Page 16349 sign the contracts to put the tax abatement into effect does not and should not deprive him of his one third fee because he earned his fee when final approval for the tax abatement was received. Thus, Knott contends that his lien is valid and should be given priority over the plaintiff's mortgage or, in the alternative, that there is an issue of fact as to whether Hawley benefitted from Knott's work.
A special or charging lien "is a lien placed upon any money recovery or fund due the client at the conclusion of suit." Marsh, Day Calhoun v.Solomon, 204 Conn. 639, 643 (1987). "It has long been held that an attorney has an equitable lien upon the avails [of his actions for a client] for the services and expenses in the suit."(Internal quotation marks omitted) Cooke v. Thresher, 51 Conn. 105, 107 (1883) Perlmutter v.Johnson, 6 Conn. App. 292, 298 (1986), cert. denied, 200 Conn. 801
(1986), cert. denied, 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839
(1987). Our Supreme Court first recognized a charging lien in Cooke,
supra, wherein the Court indicated a charging lien "is a common law lien recognized as an equitable means to enforce a client's agreement to pay fees from the judgment or settlement achieved by the efforts of counsel."Gordon v. Ignal, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 339700 (March 8, 2001, Rush, J.) In Marsh, Day Calhoun v. Solomon, supra, our Supreme Court approved (albeit in the context of retaining rather than charging liens) the principle that "an attorney who has worked on a matter shall be favored with regard to the asset he or she has worked to create." 204 Conn., at 644. Thus, our Supreme Court continues to recognize the existence of an attorney's common law charging lien where, as here, there is a written agreement that entitles the attorney to obtain his fee from the recovery. See also, McNamara Goodman v. Pink, 44 Conn. Sup. 592, 601-02 (1997).
An attorney's charging lien "may also be created by a contingency fee agreement in which the parties contract that the attorney's fees will come from the judgment recovered. . . . In the absence of statute or agreement indicating otherwise, the lien attaches to the judgment but relates to the commencement of services."[7] Paine Webber, Inc. v.Chapman, Moran, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 290715, McGrath, J., (September 7, 1994). The Supreme Court has stated that "no distinction is to be made [for charging liens brought against] recoveries achieved by judgment and those obtained by settlement." McNamara Goodman v. Pink, 44 Conn. Sup., at 602.
In the present case, Knott was employed by Hawley to provide multiple services in relation to the property. The Notice of Contract specifically relates to obtaining a tax abatement for the property. Knott obtained the abatement he was hired to obtain. That the defendant failed to sign the contract necessary to effectuate the tax relief sought cannot deprive CT Page 16350 Knott of the equitable lien he has and that is so notwithstanding the absence of either a court judgment or approved settlement agreement.[8]
There is a genuine issue of material fact as to whether his work generated a "fund" to which an attorney's charging lien might attach as there is a genuine issue of material fact whether such lien has priority over the plaintiff's mortgage. There is insufficient evidence presented to conclude Hawley did not sign the contract in question and, thus, a genuine issue of material fact exists in that regard as well. The plaintiff having failed to make the requisite showing as to Knott, its motion for summary judgment as pertains to Knott is denied.
The motion for summary judgment is granted as to Tilton and Fitzco; it is denied as to Knott.
So Ordered,
SHEEDY, J.