******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOHN W. MILLS *v.* STATEWIDE GRIEVANCE COMMITTEE
## (SC 21090)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander and Dannehy, Js.

*Syllabus*

The plaintiff attorney appealed from the judgment of the Appellate Court, which had upheld the trial court's dismissal of his appeal from a reprimand issued by the reviewing committee of the defendant, the Statewide Grievance Committee. The reviewing committee found, inter alia, that the plaintiff had violated, among other rules, rule 8.2 (a) of the Rules of Professional Conduct, which prohibits an attorney from making statements concerning the qualifications or integrity of a judge that the attorney knows to be false or with reckless disregard as to the truth or falsity of those statements. The statements at issue appeared in a motion the plaintiff filed, in which he asserted, inter alia, that certain Probate and Superior Court judges who had presided over a lengthy fee dispute between the plaintiff and another attorney were unwilling "to analyze the facts and the law," issued decisions with no "meaningful jurisprudence," and "totally disregarded" the applicable law. On appeal to this court, the plaintiff claimed, inter alia, that the Appellate Court had improperly upheld the trial court's dismissal of his appeal from the reprimand because the reviewing committee's finding that he had violated rule 8.2 (a) was clearly erroneous and because he satisfied his burden of producing evidence of his objective, reasonable belief that his statements were true. *Held*:

The Appellate Court properly upheld the trial court's dismissal of the plaintiff's appeal from the reprimand, as the reviewing committee's finding that the plaintiff had made statements with reckless disregard as to their truth or falsity was supported by clear and convincing evidence and, therefore, was not clearly erroneous.

The record demonstrated that the judges the plaintiff criticized provided meaningful and legally supported decisions addressing the plaintiff's claims regarding the fee dispute and that the plaintiff's statements did not comport with the complex factual and procedural history of the fee dispute and instead were grounded in rumor, speculation, and apparent frustration with decisions that were not in his favor.

Moreover, the reviewing committee's decision made clear that it considered the lengthy fee dispute proceedings in deciding whether the plaintiff violated rule 8.2 (a) and weighed what actually occurred during those proceedings against the plaintiff's assertion that the judges whom he criticized had deprived the plaintiff of due process by wilfully refusing to apply the law.

Furthermore, the plaintiff failed to satisfy his burden of producing any evidence of an objective, reasonable belief that his statements were true, as

the record belied the plaintiff's claims that the judges who were the subject of his statements were less than diligent in their adjudication of the fee dispute, and the purported errors on which the plaintiff relied were insufficient to satisfy his burden of demonstrating that the judges had intentionally disregarded the law.

(*Two justices dissenting in one opinion*)

Argued October 31, 2025—officially released April 7, 2026

*Procedural History*

Appeal from the decision of the defendant reprimanding the plaintiff for violation of the Rules of Professional Conduct, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Cobb, J.*; judgment dismissing the appeal, from which the plaintiff appealed to the Appellate Court, *Seeley*, *Westbrook* and *Sheldon, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Suzanne B. Sutton*, for the appellant (plaintiff).

*Brian B. Staines*, chief disciplinary counsel, for the appellee (defendant).

*Opinion*

DANNEHY, J. In this certified appeal, we consider whether an attorney's statements in a motion filed with the Superior Court constitute a violation of rule 8.2 (a) of the Rules of Professional Conduct, which prohibits lawyers in this state from making statements "concerning the qualifications or integrity of a judge" that they know "to be false or with reckless disregard as to [their] truth or falsity . . . ." The plaintiff, John W. Mills, who is a member of the Connecticut bar, appeals from the Appellate Court's judgment affirming the trial court's dismissal of his appeal from a reprimand issued by the reviewing committee of the defendant, the Statewide Grievance Committee, for violations of rules 8.2 (a) and 8.4 (4)[1] of the Rules of Professional Conduct. The plain-

---

[1] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . . (4) Engage in conduct that is prejudicial to the administration of justice . . . ."

tiff claims that the reviewing committee's finding that he violated rule 8.2 (a) of the Rules of Professional Conduct was clearly erroneous because the committee failed to consider the evidence he presented that established an objective basis for the truth of his statements.[2] We affirm the judgment of the Appellate Court.

The record reveals the following facts and procedural history. In July, 2019, after a prolonged and

---

[2]We decline to address two additional claims advanced by the plaintiff. First, the plaintiff claims that the reviewing committee's finding that he engaged in conduct that is prejudicial to the administration of justice in violation of rule 8.4 (4) of the Rules of Professional Conduct was arbitrary and capricious and an abuse of discretion. During oral argument before this court, however, the plaintiff's counsel stated that the plaintiff no longer challenges the reviewing committee's determination that he violated rule 8.4 (4).

Second, the plaintiff claims that the reviewing committee's application of an objective, rather than a subjective, test in determining whether he made the statements at issue with reckless disregard as to their truth or falsity was contrary to applicable law. The proper legal standard, the plaintiff claims, is the subjective test that applies to a claim for civil liability for defamation of a public figure set forth in *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). The plaintiff presents virtually no analysis, however, in support of this claim. Rather, he conceded in his brief and at oral argument that, in our decision in *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 227–28, 234 n.14, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006), we adopted an objective standard, as have most states, which is controlling. Since *Notopoulos*, we have reaffirmed our use of an objective standard. See *Statewide Grievance Committee* v. *Burton*, 299 Conn. 405, 412, 10 A.3d 507 (2011) (in absence of attorney's "reasonable, objective belief in the truth of the statements," court "will infer that the allegations were either false or made in reckless disregard to truth or falseness"). Furthermore, in the plaintiff's principal brief, he applies solely the objective standard, contending that this court should reverse the judgment of the Appellate Court because he presented evidence of his objective, reasonable belief that the statements were true. And, in his reply brief, he states that he and the defendant "agree[d] . . . [on] the objective standard of [rule 8.2 (a) of the Rules of Professional Conduct] . . . ." The plaintiff nowhere suggests that this court should overrule *Notopoulos* or its progeny and, therefore, offers no explanation as to why this court should conclude that the principles underlying the doctrine of stare decisis are overcome in this instance. See generally *State* v. *Salamon*, 287 Conn. 509, 519, 949 A.2d 1092 (2008) ("[t]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent

contentious fee dispute between the plaintiff and Douglas P. Mahoney, an attorney who had represented a party in a wrongful death action prior to the plaintiff undertaking that representation, the plaintiff initiated an interpleader action "[i]n an effort to have [the fee] dispute heard by a court of general jurisdiction . . . ." Following settlement conferences before Superior Court Judge Barbara N. Bellis, both attorneys agreed to a negotiated resolution of the fee dispute. In accordance with the court's resulting order, the plaintiff submitted a motion for an order for release of funds pursuant to the agreed on distribution. In that motion, however, referring to prior judicial proceedings addressing the fee dispute, which we detail later in this opinion, the plaintiff made the following statements, which are the subject of this appeal: "While the undersigned genuinely appreciates the sincere efforts of this court [Judge Bellis] to bring this matter to a close after years of litigation, the plaintiff is nevertheless completely disillusioned and disappointed with the prior judges who have 'heard' this case, and their unwillingness to make any meaningful effort to analyze the facts and the law. Decision after decision was not only legally incorrect, but devoid of *any* meaningful jurisprudence. The plaintiff has opted to resolve this case solely because it has become apparent that, in this instance, for whatever reason, justice is not possible. In thirty years of practice, I have never seen anything like this, where the rules and the law are simply and totally disregarded." (Emphasis in original.)

Following receipt of the plaintiff's motion, Judge Bellis referred him to the Office of the Chief Disciplinary Counsel for investigation as to whether any of the plaintiff's statements violated the Rules of Professional Conduct. The chief disciplinary counsel assigned the referral to the grievance panel for the judicial district of Tolland, and, thereafter, that panel conducted the initial investigation. Based on the results of that investigation, Attorney Richard Florentine, grievance counsel for the judicial

reasons and inescapable logic require it" (internal quotation marks omitted)). In light of the plaintiff's inadequate briefing, as well as his concessions at oral argument, we deem these claims abandoned. See, e.g., *State* v. *Dabate*, 351 Conn. 428, 444 n.12, 331 A.3d 1159 (2025).

district of Tolland, filed a complaint with the defendant in accordance with our rules of practice. The complaint was assigned to the grievance panel for Bethany, New Haven, and Woodbridge, which found probable cause that the plaintiff had violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct. Consistent with that finding, the grievance panel filed the probable cause finding and record with the defendant, which notified the plaintiff of the remote hearing to be conducted by the reviewing committee, which is a subcommittee of the defendant.

Thereafter, the reviewing committee held a hearing on the grievance complaint. Disciplinary counsel called the plaintiff as his sole witness and questioned him regarding the statements that he had made in the motion and during the underlying fee dispute. The plaintiff described the underlying dispute and explained the basis for his belief that the statements were true. In support of his claim that he had not violated any Rules of Professional Conduct, the plaintiff relied on his testimony and two exhibits from the underlying Probate Court proceedings: (1) a May, 2014 letter from Mahoney to the Probate Court, indicating that Mahoney would no longer represent the estate (estate) of the decedent in the wrongful death action, and (2) Mahoney's motion to disqualify the plaintiff as counsel, along with the estate's objection thereto, filed in the Superior Court appeal of the Probate Court decree that had awarded fees to Mahoney and the plaintiff.

The reviewing committee found that the plaintiff had violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct and reprimanded him for those violations. The plaintiff thereafter sought review by the defendant, which affirmed the decision of the reviewing committee. The plaintiff later appealed to the Superior Court, which dismissed his appeal and denied his subsequent motion for reconsideration.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. The Appellate Court affirmed the trial court's judgment, holding that (1) the reviewing committee applied the proper legal standard

in determining that the plaintiff made the statements with reckless disregard as to their truth or falsity; *Mills* v. *Statewide Grievance Committee*, 228 Conn. App. 852, 859–60, 326 A.3d 309 (2024); (2) the reviewing committee's findings were supported by clear and convincing evidence; id., 865; and (3) the reviewing committee did not abuse its discretion in issuing the reprimand. Id., 868. This certified appeal followed.[3]

I

Before we turn to the merits of the plaintiff's claim, we note that, in rendering its decision, the reviewing committee aptly characterized the fee dispute proceedings underlying the plaintiff's statements as "lengthy and involved." A summary of the relevant background is helpful to place the matters considered by the reviewing committee in the proper context.[4]

In 2012, a sixteen year old boy (decedent) was killed in a bicycle accident. The decedent's estate initially retained Mahoney, who negotiated a $50,000 settlement with the

[3] This court granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly uphold the trial court's dismissal of the plaintiff's appeal from his reprimand by the defendant . . . on the basis of rule 8.2 (a) of the Rules of Professional Conduct?" *Mills* v. *Statewide Grievance Committee*, 351 Conn. 903, 903–904, 329 A.3d 240 (2025).

[4] Although many of the filings in the underlying fee dispute were not individually admitted as full exhibits during the disciplinary proceedings, the plaintiff's arguments before both the reviewing committee and this court plainly presume familiarity with them. Moreover, the questioning by disciplinary counsel and the plaintiff's testimony at the disciplinary hearing extensively referenced the circumstances underlying those proceedings, which were considered, and expressly referenced, by the reviewing committee in rendering its decision. Accordingly, for the limited purpose of providing appropriate procedural context, we take judicial notice of the relevant Superior Court dockets and their contents. See, e.g., *McCarthy* v. *Commissioner of Correction*, 217 Conn. 568, 580 n.15, 587 A.2d 116 (1991) (recognizing that this court "may take judicial notice of files of the Superior Court in the same or other cases"); see also E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 2.3.4 (d), p. 107 ("Court records may be judicially noticed for their existence, content, and legal effect. . . . For example, a court may judicially notice that certain testimony was given in a case, but not that it was true." (Citations omitted.)).

motorist's insurance carrier in resolution of a wrongful death claim. Thereafter, the estate terminated Mahoney's representation and retained the plaintiff, who reached a settlement on an underinsured motorist claim with the decedent's insurance provider on behalf of the estate for $200,000. At a July, 2014 hearing, Probate Court Judge Michael R. Brandt (1) authorized the plaintiff to agree to the underinsured motorist settlement, and (2) awarded Mahoney attorney's fees from the $50,000 settlement. In the decree awarding Mahoney attorney's fees, Judge Brandt stated that this disbursement would conclude Mahoney's involvement in the estate proceedings.

Judge Brandt subsequently held a hearing on September 30, 2014, to review and approve the estate's final accounting. At that hearing, Mahoney sought a portion of the $66,666.67 in attorney's fees based on his efforts in reaching the underinsured motorist settlement. The Probate Court approved the final account but reserved the resolution of the distribution of the $66,666.67 of disputed attorney's fees.

Thereafter, Judge Brandt scheduled a May, 2015 hearing to address the fee dispute. The plaintiff did not attend the scheduled May, 2015 Probate Court hearing on the fee dispute. Judge Brandt issued a decree on August 31, 2015 (August, 2015 decree), ordering the plaintiff (1) to distribute $40,000 of the disputed fees to Mahoney, and (2) to file an affidavit of closing of estate. The plaintiff appealed from this decree to the Superior Court, listing the decedent's estate as the plaintiff and serving himself and Mahoney as "interested parties . . . ."

On the same day that he filed the appeal, the plaintiff filed an affidavit of closing of estate with the Probate Court. In October, 2015, Judge Brandt accepted the affidavit of closing and closed the remainder of the estate.

In November, 2015, after the decedent's estate was closed, the plaintiff filed motions to stay all Probate Court proceedings in both the Probate Court and the Superior Court. Superior Court Judge Matthew Frechette denied the motion to stay filed in the Superior Court appeal, as well as the plaintiff's subsequent motion

for reconsideration.[5] The plaintiff filed an interlocutory appeal with the Appellate Court from Judge Frechette's denial of his motion to stay. The Appellate Court dismissed the appeal for lack of a final judgment.

The plaintiff then filed a motion to dismiss the probate appeal that he had filed in the Superior Court, contending that the Probate Court lacked subject matter jurisdiction when it issued the August, 2015 decree and that, as a result, the Superior Court, sitting as the Probate Court in the appeal, also lacked jurisdiction. Judge Frechette issued a written decision denying the motion. *Estate of Kusmit* v. *Court of Probate, District of East Haven-North Haven*, Superior Court, judicial district of New Haven, Docket No. NNH-CV-15-6057289-S (August 31, 2016) (63 Conn. L. Rptr. 38, 42).

Mahoney subsequently moved to disqualify the plaintiff as counsel to the estate, but, before the court could rule on the motion, the plaintiff withdrew as a party to the appeal, citing the court's denial of his motion to dismiss as the basis. After the plaintiff's withdrawal, Judge Frechette granted the motion to disqualify the plaintiff as counsel to the estate.

Thereafter, the probate appeal was tried de novo before Superior Court Judge Sybil V. Richards. Judge Richards issued a written decision directing the plaintiff to distribute $40,000 of the disputed fee to Mahoney and the remaining $26,666.66 to the estate. *Estate of Kusmit* v. *Mahoney*, Docket No. NNH-CV-15-6057289-S, 2017 WL 3625696, *3 (Conn. Super. July 18, 2017), appeal dismissed sub nom. *In re Probate Appeal of Kusmit*, 188 Conn. App. 196, 204 A.3d 776 (2019). The estate, represented by new counsel, appealed from that judgment to the Appellate Court. Three days later, the plaintiff entered a new appearance in the Superior Court probate appeal as an interested party and filed a second, independent appeal on behalf of the estate. The Appellate Court dismissed the plaintiff's appeal but heard the appeal filed by the estate. The Appellate Court ultimately dismissed

---

[5] Acting on the motion to stay filed in the Probate Court, Judge Brandt convened a hearing, reminded the plaintiff that the estate was closed, and dismissed the motion to stay.

the estate's appeal, concluding that the estate was not aggrieved by the judgment of the trial court. See *In re Probate Appeal of Kusmit*, supra, 188 Conn. App. 203.

Prior to a hearing on Mahoney's motion for order to show cause why the plaintiff had not complied with Judge Richards' July, 2017 order to distribute the disputed fees, the plaintiff initiated the interpleader action. After reaching a settlement in the interpleader action, the plaintiff filed his motion for order for release of funds, which contains the statements that are at issue in this appeal. As we have explained, the reviewing committee held a hearing on the grievance complaint filed against the plaintiff as a result of his statements in the motion for order for release of funds. During the hearing, the chief disciplinary counsel elicited testimony from the plaintiff in support of counsel's burden to prove by clear and convincing evidence that the plaintiff had violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct.

At the hearing, the plaintiff described the specific words he used in his motion and their intended meanings. He noted that he placed the word "heard" in quotation marks because he questioned whether the judges heard him "in a proper judicial manner" and whether they "carr[ied] out their function with regard to [his] case . . . ." He went on to explain that his use of the word "heard" in quotation marks was intended to convey that there was no due process. The plaintiff explained that he chose the word "unwillingness" to describe the conduct of these judges and meant that they had "an unwillingness to address," and "completely ignored," the "points of law" that he claimed to have raised in pleadings or exhibits. He further testified that the reference to "justice is not possible" in the motion was to suggest "some very disturbing things said by some of the people that were involved in some of these decisions . . . ." Overall, he testified that the collective meaning of his statements was to convey that he was "raising repeatedly cogent, intelligent legal arguments that were backed by legal authority, whether it be statutory or controlling case law, that were not addressed repeatedly [by the judges involved]." When asked why he failed to name any of

the "prior judges" in the motion for order for release of funds, the plaintiff acknowledged that it would not be "appropriate to name judges in this pleading." When questioned further, however, he then identified each judge by name.

Regarding Judge Brandt's August, 2015 decree, the plaintiff explained that "legally—there was no jurisdiction for this to ever be heard by the Probate Court." In his view, because Judge Brandt had approved the settlement, the contingency fee, and the fee agreement, Mahoney's claim was not against the estate's property but, rather, against fees the Probate Court had determined to be the plaintiff's property.

In reference to Judge Frechette's decisions in the Superior Court appeal, the plaintiff testified that Judge Frechette denied his motion to dismiss "despite the clear black-and-white letter of the law," which, according to the plaintiff, was "absolutely clear . . . ." He claimed that Judge Frechette ignored the law—specifically, a decision on which the plaintiff had relied as binding law, *McNamara & Goodman* v. *Pink*, 44 Conn. Supp. 592, 696 A.2d 1328 (1997)—which Judge Frechette's decision did not address. Although the plaintiff credited Judge Frechette with being "a smart person" who was trying to "give thought to things," he nevertheless viewed Judge Frechette's decision as refusing to acknowledge controlling law, "as if [the plaintiff] didn't say it."

Moreover, the plaintiff explained that Judge Richards' decision "parroted exactly what Judge Brandt said to the dollar in a very short decision absent—devoid of any analysis at all." The plaintiff further testified that it was "incompetence" on the part of Judge Richards to award his portion of the disputed fees to the estate.

In support of his position that he had a reasonable, objective belief in the truth of his statements, the plaintiff (1) argued that Mahoney had waived any claim to fees from the settlement proceeds of the underinsured motorist claim, (2) relied on his jurisdictional arguments, and (3) made vague references to unsubstantiated rumors

"from people on the bar," which led him to believe that there was "something going on here that isn't right . . . ."

The plaintiff testified that Mahoney's May, 2014 letter to the Probate Court evidenced a waiver of any claim to a portion of those settlement proceeds. According to the plaintiff, no judge, in any of the proceedings concerning the fee dispute, addressed his waiver argument.

The plaintiff reiterated his position that the Probate Court never had jurisdiction over the fee dispute and that this deprived the Superior Court of jurisdiction over his appeal from the August, 2015 decree. He testified that his jurisdictional claims were denied without explanation and that it was "structurally impossible to get a proper appeal." In his view, he knew from the beginning that "[the probate dispute] did not belong in the Superior Court" and that it "should never have . . . proceeded the way it did." In support of the objective reasonableness of his statements, the plaintiff testified to the following unsubstantiated rumors: "I heard anecdotally some things that I don't know that I want to get into about comments that judges have made about me that have come back to me just through, you know, hearing things from people on the bar and so on. But there's something going on here that isn't right, and I still believe that very strongly." When specifically asked for any other objective factors on which he relied, the plaintiff responded that he had his "suspicions" based on information "learned in confidence," which he did not want to repeat and, more important, did not know whether it was true.

After reviewing the plaintiff's statements and his testimony against the backdrop of the lengthy and involved proceedings, the reviewing committee found that disciplinary counsel had established by clear and convincing evidence that the plaintiff's statements were made with reckless disregard as to their truth. The committee noted that none of the decisions or motions was overturned in any of the plaintiff's appeals. It found that the plaintiff had made these statements because he was "frustrated and upset" based on his subjective belief that he "did not have due process in the matter . . . ." The committee found that the plaintiff's statements in the motion

were "intended to attack the judiciary without a basis to do so." Thus, the committee issued a reprimand on the grounds that the plaintiff had violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct.

## II

The plaintiff claims that the reviewing committee's finding that he violated rule 8.2 (a) of the Rules of Professional Conduct was clearly erroneous. Specifically, he challenges the reviewing committee's ultimate factual finding that he made the statements with reckless disregard as to their truth or falsity. He also contends that he satisfied his burden of producing evidence of his objective, reasonable belief that the statements were true.[6] We disagree.

We begin by reviewing the legal principles and the standard of review applicable to the plaintiff's claim. In order to prove a violation of rule 8.2 (a) of the Rules of Professional Conduct, disciplinary counsel must establish, by clear and convincing evidence, that the plaintiff made a statement that (1) concerned the "qualifications or integrity of a judge," and (2) he knew "to be false or with reckless disregard as to its truth or falsity . . . ." Rules of Professional Conduct 8.2 (a); see also *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 224 n.7, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006).

We have explained that a shifting evidentiary burden exists in cases in which an attorney is subject to sanctions for violating rule 8.2 (a) of the Rules of Professional Conduct. See, e.g., *Statewide Grievance Committee* v. *Burton*, 299 Conn. 405, 412–13, 10 A.3d 507 (2011). "[T]he committee bears the initial burden of evidence to prove the ethics violation by clear and convincing

[6] At oral argument before this court, the plaintiff represented that he was challenging the reviewing committee's finding that he did not meet his burden of introducing evidence of his objective, reasonable belief in the truth of the statements. To the extent that the plaintiff may also be understood to challenge whether disciplinary counsel met his initial burden of proof, we address that issue within our analysis of the burden shifting framework of rule 8.2 (a) of the Rules of Professional Conduct.

evidence. . . . When the committee presents sufficient evidence to meet the burden, the burden of evidence shifts to the alleged violator. . . . [A]fter the [alleged violator] provides evidence that he had an objective, reasonable belief that his statements were true, the burden shifts back to the committee to rebut that evidence and, ultimately, to carry its burden of persuasion and to convince the finder of fact of the truth of the claimed violation." (Citations omitted; internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 224 n.7.

Whether an attorney made a statement that he knew "to be false or with reckless disregard as to its truth or falsity"—and thus whether he violated rule 8.2 (a) of the Rules of Professional Conduct—is a factual determination to be made by the Statewide Grievance Committee or a reviewing committee thereof. Rules of Professional Conduct 8.2 (a); see also *Cohen* v. *Statewide Grievance Committee*, 339 Conn. 503, 520–21, 261 A.3d 722 (2021). The standard of review of a challenge to a factual finding made by the Statewide Grievance Committee or a reviewing committee is well established by Practice Book § 2-38 (f). "Although the [the defendant] is not an administrative agency . . . the court's review of its conclusions is similar to the review afforded to an administrative agency decision." (Internal quotation marks omitted.) *Cohen* v. *Statewide Grievance Committee*, supra, 520. Practice Book § 2-38 (f) provides in relevant part that, "[u]pon appeal, the court shall not substitute its judgment for that of the Statewide Grievance Committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." See also *Cohen* v. *Statewide Grievance Committee*, supra, 520–21 (citing § 2-38 (f) and applying standard); *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 227–31 (same).

14

The clearly erroneous standard of review is highly deferential. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Jacob W.*, 330 Conn. 744, 770, 200 A.3d 1091 (2019). Indeed, "[a] court reviewing an attorney disciplinary proceeding . . . retains its inherent authority over the discipline of its officers in those instances when, despite the evidence in the record, it nevertheless is left with a definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Burton*, supra, 299 Conn. 412. Consistent with Practice Book § 2-38 (f) (5), we consider whether, "in view of the reliable, probative, and substantial evidence on the whole record," the reviewing committee's finding that the plaintiff violated rule 8.2 (a) of the Rules of Professional Conduct in making the statements was clearly erroneous.

At the outset, we note that the plaintiff conceded both that his statements concerned the qualifications or integrity of judges and that they were prejudicial to the administration of justice. Our review, therefore, is limited to (1) whether the reviewing committee correctly found, by clear and convincing evidence, that the plaintiff had made the statements with reckless disregard as to their truth or falsity, and (2) if so, whether the plaintiff satisfied his burden of producing any evidence of an objective, reasonable belief that his statements were true.

A

Depending on the nature of the statements alleged to have violated rule 8.2 (a) of the Rules of Professional Conduct, disciplinary counsel can often satisfy his burden of proving that a statement was made with reckless disregard as to its truth or falsity by introducing the statement into evidence and eliciting testimony from the speaker regarding the basis for that statement. See, e.g., *Statewide Grievance Committee* v. *Burton*, supra,

15

299 Conn. 413 ("the [committee] proved its case by placing the letter to the then chief justice into evidence and examining the defendant as to the basis of her allegations contained therein").

In the present case, the statements in the plaintiff's motion contain three sweeping assertions: (1) the judges in the underlying cases were unwilling to analyze the facts and the law, (2) the judges rendered decisions with no meaningful jurisprudence, and (3) the judges deliberately disregarded the applicable rules, statutes, and case law. On the basis of our review of the record, we conclude that the reviewing committee's finding that the statements in the plaintiff's motion were made with reckless disregard as to their truth or falsity is supported by clear and convincing evidence and, therefore, is not clearly erroneous. The record, as we explain, demonstrates that the various judges provided the plaintiff with meaningful and legally supported decisions despite his assertions to the contrary.

The plaintiff's testimony at his grievance hearing is a good starting point. The plaintiff testified that he "[stood] by" what he said in the motion and that his assertions were objectively true. He testified that, "despite the clear black-and-white letter of the law," Judge Frechette wrongly denied his motion to dismiss the appeal he had filed in the Superior Court, which was premised on his assertion that the Probate Court lacked jurisdiction. The plaintiff emphasized that Judge Frechette's ruling supported the statements he had made in his motion because, in his view, that ruling was "legally incorrect" and the judge "would not address certain legal arguments." He further testified that, in his case, a "legally incorrect" decision meant that the judge was abdicating his "constitutional requirement . . . [to] hear cases and provide meaningful time to analyze the facts and the law . . . ."

Judge Frechette's decision, however, explained why the Probate Court had jurisdiction over Mahoney's claim for a portion of the attorney's fees derived from the settlement of the underinsured motorist claim. Judge Frechette first explained that the Probate Court has "express jurisdiction" over an estate's accounting and

over the rights of the parties interested in that accounting. He then noted that the disputed attorney's fees constituted an administrative expense of the estate. Consistent with the Probate Court's express authority over the final accounting of an estate, Judge Frechette explained that it was necessary for the Probate Court to determine the proper distribution of the disputed fees in order to finalize the estate's administrative expenses. Judge Frechette also addressed the plaintiff's secondary argument that the disputed fees were his "law [firm's] money," explaining that, at the time of the August, 2015 order, the fees were being held in trust on behalf of the estate and that Mahoney's request for additional fees was addressed in the context of the estate's final accounting.[7]

Judge Frechette was not the only judge in the underlying proceedings to provide the plaintiff with a meaningful and legally supported decision. Judge Richards, who presided over the probate appeal, held a trial de novo and determined the appropriate fee distribution. In her memorandum of decision, she explained that the "reasonable fee owed to Mahoney is $40,000, which means the estate is entitled to the remainder of the disputed fee or, in other words, $26,666 to be exact as [the plaintiff] withdrew any claim to legal fees for his representation of the estate, and [the plaintiff] is ordered to make these distributions

---

[7] Although Judge Frechette's memorandum of decision on the motion to dismiss was generally referenced in the defendant's decisions and relied on extensively by the parties before the defendant and this court, the decision in its entirety was not admitted into the record. Accordingly, our analysis is limited to those portions of the decision that were specifically made part of the record. In the present case, it happens that those limited portions of the decision, in addition to the other evidence in the record, which includes the plaintiff's testimony, suffice to support the reviewing committee's finding that the plaintiff violated rule 8.2 (a) of the Rules of Professional Conduct. We note, however, that, because attorney grievance proceedings frequently arise from conduct in underlying judicial matters, best practice dictates that the parties, either through filings or as exhibits in any hearing, make part of the record any memorandum of decision or filing from the underlying proceedings on which they intend to rely in testimony, argument, or decision-making. See Practice Book § 2-35 (i) ("[t]he reviewing committee's record in the case shall consist of a copy of all evidence it received or considered, including a transcript of any testimony heard by it, and its decision").

within two calendar weeks of this decision."[8] Contrary to plaintiff's claim that the court refused "to make any meaningful effort to analyze the facts and the law," the record reveals that Judge Richards decided the case based in part on the fact that the plaintiff had withdrawn as a party, and, accordingly, the trial proceeded without his participation or appearance.

The plaintiff contends on appeal that the reviewing committee's decision rested solely on the fact that the judges' decisions were never overturned on appeal, suggesting that this finding was insufficient to support the committee's finding that he had violated rule 8.2 (a) of the Rules of Professional Conduct. The plaintiff's contention, however, is belied by the committee's decision. The committee's decision makes clear that it considered the "lengthy and involved" fee dispute proceedings in finding that the plaintiff had violated rule 8.2 (a), weighing what actually took place in those proceedings against the plaintiff's assertion that these judges deprived him of due process by wilfully refusing to apply the law. The record demonstrates that the plaintiff's statements do not comport with the complex factual and procedural history of the fee dispute and instead were grounded in rumor, speculation, and apparent frustration with decisions that were not in his favor. The committee explained in its decision that the plaintiff's statements provided "no added benefit or additional information" to the Superior Court in guiding its decisions and that it was clear that the statements made were without any basis in the record.[9] On the record before us, we conclude that it

_____

[8] The plaintiff testified that there was "no published opinion on what Judge Richards did." The record reflects, however, that Judge Richards issued a memorandum of decision on July 18, 2017. See generally *Estate of Kusmit* v. *Mahoney*, supra, 2017 WL 3625696.

[9] In rejecting the plaintiff's overly narrow reading of the defendant's decision, we further observe that the defendant was presented not merely with a statement that the decisions of the prior judges were incorrect but with statements that asserted that the judges' decisions reflected an "unwillingness to make any meaningful effort to analyze the facts and the law" and were "devoid of any meaningful jurisprudence." (Emphasis omitted.) Although the reviewing committee's decision noted that none of the decisions was overturned on appeal, it is hardly surprising that the defendant, in assessing the validity of those extreme claims, noted

was not clearly erroneous for the committee to find that disciplinary counsel had proved, by clear and convincing evidence, that the plaintiff's statements were made with reckless disregard as to their truth or falsity.

B

Having concluded that the reviewing committee satisfied its burden of proving, by clear and convincing evidence, that the plaintiff's statements were made with reckless disregard as to their truth or falsity, we next address whether the plaintiff satisfied his burden of providing any evidence of an objective, reasonable belief that his statements were true. In order for the plaintiff to satisfy this burden, he needed to produce evidence not merely that the decisions of the judges were incorrect, but that the decisions were so lacking in legal support that the judges evinced an "unwillingness to make any meaningful effort to analyze the facts and the law." See, e.g., *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 230 ("[a]dverse rulings in court proceedings, and even incorrect rulings, do not in and of themselves amount to evidence of illegal or unethical behavior on the part of a judge"); see also Code of Judicial Conduct, Rule 2.2, comment **(3)** ("When applying and interpreting the law, a judge sometimes may make good faith errors of fact or law. Errors of this kind do not violate this Rule.").

that fact. We acknowledge that the reviewing committee's decision could have more robustly set forth the committee's bases for finding that the plaintiff's statements had violated rule 8.2 (a) of the Rules of Professional Conduct. We decline, however, to construe its observation that none of the decisions was overturned on appeal as somehow preventing us from considering the remainder of the defendant's decision, which expressly cited to the decisions of the prior judges in the Probate Court and the Superior Court, both of which had been explored in detail by disciplinary counsel in his questioning of the plaintiff during the hearing. We further decline to construe that statement as precluding us from reviewing the defendant's decision in view of the whole record. Such an approach would be directly contrary to Practice Book § 2-38 (f) (5), which requires us to consider whether the defendant's decision is clearly erroneous "in view of the reliable, probative and substantial evidence *on the whole record* . . . ." (Emphasis added.)

The plaintiff argues that he satisfied that burden because he demonstrated that the judges who presided over the various stages of the litigation had refused to adjudicate his claims, ignored his argument that the Probate Court lacked jurisdiction, left a "trail of errors" in managing the case, and denied him appellate review. As we have explained, however, the record belies the plaintiff's claims that the judges in the Superior and Probate Courts were less than diligent in their adjudication of the cases giving rise to this disciplinary matter.

Although the plaintiff cannot satisfy his burden of proving objective reasonableness simply by arguing the legal incorrectness of the decisions issued by the courts in rejecting his claims, we nevertheless address two additional arguments that he advances in support of his contention that the judges in the Superior and Probate Courts incorrectly concluded that the Probate Court had jurisdiction over the fee dispute. First, the plaintiff relies on a decision of the Superior Court, *McNamara & Goodman* v. *Pink*, supra, 44 Conn. Supp. 592, which he incorrectly characterizes as controlling jurisdictional authority from *this court*, to argue that the judges in the Superior and Probate Courts improperly rejected his claim that the Probate Court lacked jurisdiction. Even if *Pink* were controlling, the plaintiff's argument fails. *Pink* does not stand for the proposition that a Probate Court never has jurisdiction over attorney's fees. Instead, that decision addresses whether attorney's fees from a settlement are paid before the claims of other creditors to an estate. See id., 602–603.

Second, the plaintiff points to Judge Brandt's November, 2019 decree (2019 decree), which stated that "[t]his [c]ourt has no jurisdiction of matters outside of the estate. . . . The dispute was a conflict over [attorney's] fees." To provide context for the plaintiff's argument, at the time the July, 2019 interpleader case was settled, Judge Bellis ordered the Probate Court to reopen the estate to approve the settlement. Judge Brandt issued the 2019 decree in response to the plaintiff's subsequent petition consistent with that order. Judge Brandt noted that, at that time, the estate was closed. The remaining

20

fee dispute between the attorneys, therefore, was a matter outside of the estate, over which the Probate Court lacked jurisdiction. The plaintiff reasons that the Probate Court's 2019 decree demonstrates his reasonable belief that his statements were true. We disagree.

The 2019 decree simply does not accomplish the task that the plaintiff claims it does. That is, the Probate Court's conclusion regarding its jurisdiction in 2019, long after the estate had been closed and all distributions had been made, has no bearing on whether jurisdiction existed in August, 2015, when the estate remained open, and when the Probate Court acted pursuant to its authority and responsibility to preside over the administration of the estate, including the distribution of reasonable attorney's fees. The plaintiff's reliance on the 2019 decree is, therefore, inapposite.

With respect to the plaintiff's reliance on the alleged "trail of errors" in the proceedings, the purported errors are insufficient to satisfy the plaintiff's burden of showing that the judges intentionally disregarded the law. The alleged errors either involve Mahoney's conduct (rather than the conduct of the various judges), broad claims that the judges' decisions (which the plaintiff too did not put into evidence) were legally incorrect, or unspecified "suspicions" that the plaintiff acknowledged may not be true.[10]

As to the plaintiff's last claim, that he was denied the opportunity to appeal and that this supposed denial provides evidence of his objective, reasonable belief in the truth of his statements, we note that the plaintiff's inability to appeal from Judge Richards' judgment was his own doing. The record reveals that the plaintiff

---

[10]The plaintiff, for example, argues that, although he was a necessary witness for purposes of the trial de novo before Judge Richards, he was never called as a witness. Mahoney's failure to call the plaintiff as a witness, however, does not involve an action by any of the courts. Furthermore, the plaintiff argues that Judge Richards improperly relied on Judge Brandt's August, 2015 decree at the trial de novo. Although the plaintiff attached that decree to his complaint (presumably for the court's consideration), there is no indication in the record that Judge Richards considered it in reaching her determination.

himself was largely responsible for the failure of his claims. Perhaps the best illustration of this point is the plaintiff's decision not to attend the May, 2015 Probate Court hearing on the fee dispute. Despite "insist[ing]" that Judge Brandt address the fee dispute, the plaintiff voluntarily chose not to attend the hearing and not to avail himself of the opportunity to explain why he believed he deserved the entire fee. As far as the plaintiff's inability to appeal from Judge Richards' decision, his withdrawal as a party to the appeal of the August, 2015 decree essentially guaranteed that result, leaving only the estate as a party to the action, which prompted the Appellate Court to dismiss the estate's appeal for lack of standing. See *In re Probate Appeal of Kusmit*, supra, 188 Conn. App. 203.

At most, the evidence establishes that the plaintiff raised legal arguments and that the judges explained why his arguments were not persuasive. Even if it were debatable that the plaintiff introduced some evidence that the judges may have made "good faith errors" in adjudicating the fee dispute; Code of Judicial Conduct, Rule 2.2, comment (3);—and we conclude that he failed even to make this showing—he fell far short of carrying his burden of proving that the judges intentionally disregarded the facts and law. Accordingly, nothing in the record supports the plaintiff's allegations in his statements.

C

The dissent contends that our conclusion that the reviewing committee correctly determined that the plaintiff violated rule 8.2 (a) of the Rules of Professional Conduct rests on evidence outside of the record and factual findings that the committee did not make. It concludes that the judgment of the Appellate Court upholding the dismissal of the plaintiff's appeal from the committee's decision must be reversed. But the dissent reaches that conclusion through an application of clear error review with which we respectfully disagree.

Although the dissent accurately sets forth the governing standard of review of a grievance committee's

decision, its ensuing analysis departs from that standard. Rather than examining all of the evidence in the record to determine whether the reviewing committee's finding was well supported, the dissent concentrates on evidence it asserts was not part of the record. Indeed, it places considerable weight—if not dispositive weight—on the fact that neither party introduced as exhibits the memoranda of decision authored by Judges Frechette and Richards. Clear error review, however, requires something different. Our role is confined to determining whether the reviewing committee's reckless disregard finding was supported by evidence in the record. See, e.g., *Connecticut Fine Wine & Spirits, LLC* v. *Dept. of Consumer Protection, Liquor Control Commission*, 237 Conn. App. 1, 14, 350 A.3d 1142 (2025) (appellate court's review of agency's determination is based on evidence presented, not on what evidence could have been presented). Absent from the dissent's analysis is an examination of much of the relevant evidence in the record, that is, the plaintiff's testimony at the grievance hearing. The plaintiff described at length the underlying judicial proceedings, the judges' decisions, the context in which his accusations were made, and the intended meaning of his statements. The plaintiff's testimony, together with his motion for an order for release of funds and the exhibits he introduced, which included what the dissent discounts as "fragmentary excerpts" of the underlying decisions, provided sufficient evidentiary support for the reviewing committee's finding that the plaintiff had violated rule 8.2 (a) of the Rules of Professional Conduct.

The dissent then contends that the reviewing committee's finding is clearly erroneous because it purportedly rested only on the observation that none of the challenged rulings was overturned on appeal. This reasoning misapprehends both our standard of review and the committee's decision. Whether the committee's finding that the plaintiff violated rule 8.2 (a) of the Rules of Professional Conduct is clearly erroneous requires examination of the evidence "on the whole record"; Practice Book § 2-38 (f) (5); not consideration of a single subsidiary observation made in the committee's written decision. The record

includes not only the committee's decision but also the evidence received or considered, including the testimony heard by it. See Practice Book § 2-35 (i). Moreover, the committee's decision did not rest solely on the subsidiary fact that none of the underlying judicial decisions had been overturned. After detailing the lengthy and involved history of the underlying fee dispute, the committee considered all of the evidence in the record and found, among other things, that the plaintiff had violated rule 8.2 (a) because there was no basis in the record to support the truth of the plaintiff's statements. What the dissent would effectively require is that the committee issue a decision that recites every subsidiary finding and every piece of evidence that could conceivably support the committee's finding that the plaintiff violated rule 8.2 (a). A decision by an administrative agency or by the committee, however, is not required to reflect the degree of analytical exposition or stylistic precision expected of an appellate court decision. See, e.g., *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, 343 Conn. 62, 82–83, 272 A.3d 639 (2022) ("[a]lthough the board did not issue a written decision explaining the bases on which it determined that the defendant was suitable to receive a pistol permit, there is substantial evidence in the administrative record to support its conclusion").[11]

Though professing confidence that its application of clear error review suffices to reverse the reviewing committee's decision, the dissent nevertheless invokes

[11] The dissent's contention that the record fails to establish, by clear and convincing evidence, that Judge Frechette's memorandum of decision was legally correct also misses the mark. The defendant was not required to prove that Judge Frechette's decision was correct as a matter of law. Rather, the defendant bore the burden of demonstrating, by clear and convincing evidence, that the plaintiff's statements—that Judge Frechette's decision was devoid of meaningful jurisprudence and that the judge was unwilling to apply the law—were made with reckless disregard as to their truth or falsity. See *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 224 n.7. More important, even if we assume that the plaintiff possessed a good faith basis to question Judge Frechette's ruling on the probate court's jurisdiction to apportion fees, the proper course was to preserve party status and pursue an appeal. It was not to file a motion accusing the trial court of refusing to apply the law.

*Securities & Exchange Commission* v. *Chenery Corp.*, 318 U.S. 80, 63 S. Ct. 454, 87 L. Ed. 626 (1943) (*Chenery*), suggesting that we improperly uphold the decision of the committee on grounds other than those on which it relied. The dissent's effort to inject *Chenery* into the present discussion is misguided for two reasons.

First, *Chenery* is a federal administrative law decision that is predicated on the principle that a court should not intrude on a domain Congress has exclusively entrusted to an agency. Id., 88; see also *Immigration & Naturalization Service* v. *Orlando Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002). Although we have said that our review of a grievance committee's decision is similar to our review of a decision of an administrative agency, we have been equally clear that the grievance committee is not an administrative agency. The Statewide Grievance Committee is a committee within the Judicial Branch whose members are appointed by the judges of the Superior Court. It reviews and adjudicates complaints concerning attorney misconduct—an area over which the Judicial Branch has exclusive authority. See *Persels & Associates, LLC* v. *Banking Commissioner*, 318 Conn. 652, 672, 122 A.3d 592 (2015). Accordingly, reliance on a doctrine rooted in judicial deference to a coordinate branch of government is not well suited for resolving the present dispute.

Second, *Chenery* stands for the proposition that a reviewing court may sustain an agency's decision only on the same basis articulated in the order of the agency itself. *Securities & Exchange Commission* v. *Chenery Corp.*, supra, 318 U.S. 87; see also *Interstate Commerce Commission* v. *Brotherhood of Locomotive Engineers*, 482 U.S. 270, 290, 107 S. Ct. 2360, 96 L. Ed. 2d 222 (1987) (Stevens, J., concurring in the judgment). The principle guards against post hoc rationalization; it does not constrain a reviewing court from examining whether the agency's stated findings are supported by evidence in the record. See, e.g., *E. I. du Pont de Nemours & Co.* v. *Collins*, 432 U.S. 46, 56–57, 97 S. Ct. 2229, 53 L. Ed. 2d 100 (1977) (because record before Securities and Exchange Commission (SEC) revealed substantial

evidence to support SEC's findings, and because SEC's conclusions of law were grounded on construction of statute consistent with legislative intent, federal court of appeals improperly reversed SEC's decision). That is all we do here. The reviewing committee expressly found that the plaintiff had violated rule 8.2 (a) of the Rules of Professional Conduct because he made statements in his motion with reckless disregard as to their truth or falsity. Our task under clear error review is limited to determining whether that finding is supported by evidence in the record. In concluding that it is, we do not find facts or substitute a new basis for the committee's decision. We simply evaluate whether the committee's finding is supported by the record as a whole.

In sum, we conclude that the reviewing committee's finding that the statements in the plaintiff's motion were made with reckless disregard as to their truth or falsity was supported by clear and convincing evidence in the record and, therefore, was not clearly erroneous. We further conclude that the plaintiff failed to satisfy his burden of producing any evidence of an objective, reasonable belief that his statements were true.

The judgment of the Appellate Court is affirmed.

In this opinion MULLINS, C. J., and McDONALD and ALEXANDER, Js., concurred.